**STATE of Iowa, Appellee,**

v.

**Alvin Leon WILLIAMS, Appellant.**

**No. 52489.**

Supreme Court of Iowa.

Jan. 9, 1968.

 

Anthony M. Critelli, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., David A. Elderkin, Asst. Atty. Gen., and Ray A. Fenton, Polk County Atty., Des Moines, for appellee.

GARFIELD, Chief Justice.

Defendant Alvin Leon Williams was indicted for robbery with aggravation as defined in sections 711.1 and 711.2 Code 1962 in that he robbed Leonard Walvatne, with confederates aiding and abetting him in such robbery who were armed with a dangerous weapon with intent, if resisted, to kill or maim Walvatne. Trial resulted in jury verdict of guilty. From judgment thereon defendant has appealed, assigning as error the refusal of two jury instructions requested by him.

The first request stated a verdict of guilty as charged required a finding defendant knew of his principals' intent to use a dangerous weapon and their intent to kill or maim Walvatne, if resisted. Under the request, failure to so find would prevent a verdict of guilty of more than robbery without aggravation under section 711.1.

Defendant's second request was that the state's failure to call as witnesses three police officers, the minutes of whose testimony before the grand jury were attached to the indictment, justified an inference their testimony, if given, would have been detrimental to the State.

We find no reversible error in the refusal of either or both requests.

I. No extended review of the evidence is necessary. It was not claimed or shown defendant committed the robbery alone or unassisted. The state's claim was, and there was substantial evidence thereof, defendant "set up" or "master-minded" the robbery, actually perpetrated by one or more occupants of an automobile with whom defendant arranged to follow the car driven by him, in which the victim was a passenger, to

the place where the crime was committed. We refer to the evidence as the jury could have found the facts.

Defendant was an acquaintance and supposedly a friend of the victim. July 12, 1966 was payday for Walvatne. He chose to spend the late afternoon and late evening at different taverns consuming an indiscreet quantity of beer. About 10 he left home, filled his car with gas, and went to a tavern at East 17th and University in Des Moines where he met defendant. They had about five beers there and around 12 Walvatne drove defendant in the former's car to another drinking place on Center Street on Des Moines' west side.

Around one, or later, at defendant's suggestion, the two left the Center Street tavern to return to the one on East 17th where defendant's car was parked. At his request he drove Walvatne's car on this return trip, followed by the automobile occupied by the four actual perpetrators of the robbery. Defendant stopped Walvatne's car a few minutes soon after leaving Center Street, told Walvatne he wanted to see someone, and went back to caution the perpetrators against following defendant and the intended victim too closely and not to rob him until defendant had gotten his car and disappeared.

The two acquaintances then resumed their trip to the parking lot near the 17th Street tavern where defendant stopped Walvatne's car, went to his own and drove away. Soon after Walvatne moved over into the driver's side of the seat to drive home, one of the four pursuers thrust a .32 caliber pistol in his face with the evident intent of robbing him of his money. (He had about $70 in his billfold.) When Walvatne asked "What's going on?", thinking it was all a joke, one of his assailants opened the car door, another grabbed him by the shoulder and, with the gun, beat him over the head into unconsciousness. When he "came to" in a hospital he was badly beaten up and his billfold and contents were gone.

Later that same night the automobile containing the four men who trailed Walvatne to the scene of the robbery was stopped by police officers and the four were taken into custody. With the consent of the owner-driver of the car it was searched and Walvatne's billfold, the .32 caliber pistol, a bloodstained pair of white "levis" worn by Clement, who administered the beating and robbed the victim, and nine dollar bills were found. About six a. m. defendant was arrested at his home for his part in the robbery.

As the only defense witness he denied complicity in the robbery but admitted being with Walvatne at the east side tavern, going with him to the one on Center Street, talking to Clement there, in answer to Clement's question, telling him where his (defendant's) car was parked, driving Walvatne in his car back to the east side tavern, getting in his (defendant's) car and driving off about two a. m.

II. We consider now the refusal of the first requested instruction mentioned at the outset. Paragraph four of Instruction 8 to the jury required a finding that defendant, or those aided and abetted by him, in stealing the money were armed with a revolver with intent to kill or maim Walvatne if he resisted the stealing. As stated, the request was that defendant must have known of his principals' intent to use a dangerous weapon and their intent to kill or maim Walvatne, if resisted.

Instruction 7 contained the provisions of section 688.1 Codes 1962, 1966 abrogating the distinction between an accessory before the fact and a principal and requiring that all persons concerned in committing an offense, whether they directly commit the act or aid and abet its commission, though not present, be indicted, tried and convicted as principals. The instruction went on to state that guilt of one who aids and abets commission of a crime must be determined upon the facts showing the part he had in it and not upon the degree of another's guilt.

One sufficient answer to the complaint over refusal of defendant's first request is found in the terms of section 711.2 he was charged with violating. Under this statute robbery with aggravation may be committed in any of three ways: (1) by being "armed with a dangerous weapon, with intent, if resisted, to kill or maim the person robbed; or (2) if, being so armed, he wound or strike the person robbed; or (3) *if he has any confederate aiding or abetting him in such robbery, present and so armed,* * *."* (emphasis added).

■ As indicated at the outset, the indictment charges defendant committed the crime in the third of these ways. There is no claim this portion of section 711.2 violates any constitutional provision or is otherwise invalid. There is substantial evidence defendant violated the part of the statute we have italicized. The court thus properly instructed the jury to return a guilty verdict if it found the persons he was aiding and abetting in stealing the money from Walvatne, by force and violence or by putting him in fear, were armed with a revolver with intent, if resisted, to kill or maim him.

III. We have considered the authorities defendant cites to support this claim of error and are not persuaded by them or by the applicable authorities generally.

77 C.J.S. Robbery § 32 b, p. 471 states "Under statutes classifying robbery in accordance with its commission with a dangerous weapon with intent to kill or maim, if resisted, an absent person may be liable for robbery of such classification without proof that he participated in the intent to kill or maim."

Killingsworth v. State, 90 Fla. 299, 105 So. 834, 838–839, is directly in point as shown by these excerpts from the opinion:

"The information charges that the principals, when committing the robbery, were armed with pistols with intent, if resisted, to kill and maim Alonzo C. Clewis. Counsel contend that before the defendant, who was charged as accessory before the fact, could be convicted as charged the state should prove that he had a like intent. A charge to that effect was requested and denied. The ruling is the basis for the twentieth assignment of error. * * *.

"* * * to render one guilty as an accessory before the fact, he must have had the requisite criminal intent, but he need not necessarily have intended the particular crime committed by the principal. An accessory is liable for any criminal act which, in the ordinary course of things, was the natural or probable consequence of the crime he advised or commanded, although such consequence may not have been intended by him. But for crimes which are the outcome of a total or substantial departure from his directions or instructions he is not liable. * * *

"The use of deadly weapons or the use of force or putting the victim in fear is a natural or probable consequence of the crime of robbery. The requisite criminal intent is the felonious taking from another of his money or other property. * * *

"The accessory before the fact is necessarily a conspirator with the actual perpetrators of the offense, because he discusses the commission of the offense with them, helps in their plans, counsels and procures its commission; he is, therefore, equally liable for the acts of his associates."

As said in State v. Fonza, 254 Iowa 630, 635, 118 N.W.2d 548, 551, "Robbery is an offense involving violence or the threat of violence." And as Killingsworth indicates, use of a dangerous weapon is a natural or probable consequence of the crime of robbery.

State v. Kneedy, 232 Iowa 21, 30, 3 N.W. 2d 611, 616, cites many authorities for this: "Where two or more persons combine to accomplish an unlawful purpose, each is responsible for the act of another which is a probable consequence of carrying out the unlawful design, even though the particular crime committed was not a part of that de-

sign." See also 22 C.J.S. Criminal Law (1961 volume), § 87 a, pp. 256–258; Anno. 16 A.L.R. 1043, 1047.

We do not find State v. King, 198 Iowa 325, 338, 197 N.W. 981, cited by defendant, in point or contrary to our holding here. In fact the opinion approves a jury instruction stating in part that an aider and abetter may be guilty of murder although he contemplated only that some great bodily harm be inflicted on the person slain by the principal. This was said to be in accord with the rule given the jury by Instruction 7 here that guilt of one who aids or abets commission of a crime must be determined upon the facts showing the part he had in it and not upon the degree of another's guilt.

■ IV. As stated, defendant's second claim of error is in the refusal of his requested instruction that the state's failure to call as witnesses three police officers who testified before the grand jury, and the minutes of such testimony were attached to the indictment, justified an inference their testimony, if given at the trial, would have been detrimental to the state.

Five police officers testified at the trial, together with the victim of the robbery, the driver of the car containing the principals and a man who lived near the scene of the crime. A good deal of the testimony of these five officers was cumulative to that of one or more of their number. The minutes of the testimony before the grand jury of those not called at the trial indicate they could have added little, if anything, to the trial testimony of their five fellow officers.

Further, it was shown at the trial the three officers not then called as witnesses were all on vacation. (Defendant is mistaken in asserting such showing was made only as to two of them.)

■ Under these circumstances we hold it was not error to refuse the requested instruction. Under some circumstances a jury may properly infer the testimony of

a witness not called would have been unfavorable to one of the parties. However, such inference does not arise where absence of the testimony is explained. State v. Cotton, 240 Iowa 609, 625–626, 33 N.W.2d 880, 889–891, and State v. Hild, 240 Iowa 1119, 1135, 39 N.W.2d 139, 148, citing Cotton, the two principal precedents defendant cites, recognize this exception to the claimed rule defendant relies on here.

Both Cotton and Hild were members of a county board of supervisors charged with obtaining money by false pretenses from the county. The principal actor in the transactions testified at length in both trials but no attempt was made to show by him *or other witnesses* the falsity of claims against the county allowed by the board. The inference defendant seeks to invoke here was referred to in support of our holding it was error to receive the claims in evidence without such showing.

The showing that the three officers not called at the trial were on vacation, together with the fact their testimony would have been only cumulative, furnished a plausible explanation for absence of their testimony.

State v. Parker, Iowa, 151 N.W.2d 505, 512–513, fully supports our holding on this assigned error. There the jury was instructed that the fact any witness was not called creates no inference or presumption as to what his testimony might or might not be. Defendant's objection to the instruction raised the same contention defendant made here by his requested instruction. We held, two Justices dissenting, the instruction was not reversible error.

It would seem this defendant was considerably better off here with no instruction on the subject than Parker was with an instruction expressing a view contrary to that stated in the request of this defendant. It would seem further that the grounds for the dissent in Parker are not present here.

The Parker opinion cites several authorities for the proposition that no presumption

arises from the failure to call a witness when it is shown he is equally available to either party or the testimony he could give would be merely cumulative.

The judgment is

Affirmed.

All Justices concur except RAWLINGS and BECKER, JJ., who concur in the result.