STATE of Iowa, Appellee,

v.

Michael LANGLET, Appellant.

No. 62256.

Supreme Court of Iowa.

Sept. 19, 1979.

Patrick H. Payton, of Payton & Hearn, P. C., Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Selwyn L. Dallyn, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, ALLBEE and LARSON, JJ.

LARSON, Justice.

The State of Iowa has obtained further review of a decision by the Iowa Court of Appeals reversing a judgment of conviction of operating a motor vehicle while under the influence of alcohol (O.M.V.U.I.), in violation of Section 321.281, The Code 1977. The court of appeals had reversed on the basis the trial court erred in failing to instruct the jury that, where certain evidence had been destroyed by the State, it could infer such evidence would not have supported the charge. We vacate the decision by the court of appeals and affirm the judgment of conviction.

The defendant originally raised in his appeal several issues in addition to the one involving the inference, which is the only one decided by the court of appeals. Because we find no error in the trial court's treatment of the inference issue, we must examine the remaining issues to determine whether any error appears which would require reversal. These additional issues are: admission of the results of the chemical blood test over defendant's foundation challenges; instructing the jury on its duty to determine the defendant's "guilt or innocence" rather than his "guilt or nonguilt"; giving Iowa Uniform Jury Instruction No. 5.5 regarding defendant's manner of operating the vehicle to infer intoxication; and giving Iowa Uniform Jury Instruction No. 105 on credibility.

I. *Destruction of tapes.* Defendant was arrested on February 16, 1978. Following his arrest, he was taken to the Newton Law Center. While in custody, he placed a telephone call to his attorney and received one from his wife. Both calls were made over the Newton Police Department's line one which is continuously recorded. A recurrent beep is audible to the users to reflect the fact that a recording is being made. Defendant was informed before the first call that the conversation would be recorded, and he informed the others. He did not request to use an unrecorded line.

On March 14 defendant filed a request for production of documents, including the tape recordings of these telephone calls. On March 16, before the assistant county attorney had made any attempt to procure the tape from the Newton Law Center, it was erased, apparently pursuant to the city's policy of erasing all tapes after thirty days. Defendant did not contend at trial, nor does he here, that the erasure was intentional, nor the result of anything other than normal Newton Police Department procedures. At most, he alleges that if the county attorney had been more diligent, the tapes would have been preserved. At trial, the assistant county attorney professed his lack of knowledge of the erasure policy to excuse his seeming lack of diligence.

Defendant contends the taped conversations were exculpatory because they would have shown that he was extremely coherent and articulate. The State counters that it was only cumulative, because other witnesses testified that defendant's speech was normal, and that the destruction of the tape was therefore not prejudicial. However, the auditory impact of the taped conversations is qualitatively different from the testimony of the other witnesses; we cannot presume a lack of prejudice under such circumstances. We must therefore confront the legal issues raised by defendant arising out of the destruction of this evidence.

When the prosecution suppresses exculpatory evidence, the appropriate remedy is usually a new trial at which the defendant has the use of the evidence. *State v. Hillsman,* 281 N.W.2d 114, 117 (Iowa 1979); *State v. Van Rees,* 246 N.W.2d 339, 345 (Iowa 1976). That remedy is, of course, unavailable where the exculpatory evidence has been destroyed.

Defendant argues that the destruction of these tapes so prejudiced his defense that the charges should have been dismissed or, in the alternative, that the results of the

chemical blood test should have been suppressed. He cites no authority to support his theory. We have held that dismissal of a criminal prosecution is not an appropriate remedy even if exculpatory evidence has been suppressed. *Hillsman*, 281 N.W.2d at 117.

■ Similarly, suppression of a blood test is not an appropriate remedy for destruction of the tapes. The two have no direct connection; to deny the State the use of the blood test results because of the destruction of other evidence would have no support in logic. This seems to be in accord with the general rule. "A spoliator of evidence cannot be deprived of his legal rights by the exclusion of other and totally independent evidence offered by him." 31A C.J.S. *Evidence* § 152, at 388 (1964).

■ The intentional destruction of evidence, sometimes discussed as a form of obstruction of justice,[1] is usually referred to as spoliation.[2] When it is established, the fact finder may draw the inference that the evidence destroyed was unfavorable to the party responsible for its spoliation. *Prudential Insurance Co. v. Lawnsdail*, 235 Iowa 125, 130, 15 N.W.2d 880, 883 (1944); McCormick on Evidence § 273, at 660–61 (2d ed. 1972); 22A C.J.S. *Criminal Law* § 596, at 377 (1961). *Cf. United States v. Remington*, 191 F.2d 246, 251 (2d Cir. 1951) (suppression of evidence); *State v. Parker*, 261 Iowa 88, 100–01, 151 N.W.2d 505, 512–13 (1967) (dictum; failure to call witness). Spoliation involves more than destruction of evidence. Application of the concept requires an intentional act of destruction. Only intentional destruction supports the rationale of the rule that the destruction amounts to an admission by conduct of the weakness of one's case. McCormick *supra*, at 660–61; 31A C.J.S. *Evidence* § 293, at 750–51 (1964).

The spoliation inference is also said to be an attempt by the courts to penalize acts of bad faith, or that it is based upon public policy, even though not fully supportable in logic. 31A C.J.S. *Evidence* § 152, at 388 (1964).

The spoliation inference is explained by McCormick as follows:

A party's failure to produce evidence when he is free to produce or withhold may . . . be treated as an admission. As might be expected, wrongdoing by the party in connection with his case, amounting to an obstruction of justice is also commonly regarded as an admission by conduct. By resorting to wrongful devices he is said to give ground for believing that he thinks his case is weak and not to be won by fair means. Accordingly, a party's . . . destruction . . . of relevant documents or objects . . . [is an] instance of this type of admission by conduct. Of course, it is not enough to show that a third person did the acts . . . charged as obstructive. They must be fastened to the party himself . . . by showing that he did the act or authorized it by words or other conduct. Moreover, the circumstances of the act must manifest bad faith. Mere negligence is not enough, for it does not sustain the inference of consciousness of a weak case.

McCormick, *supra*, at 660–61.

Courts considering the issue have, accordingly, held that the spoliation inference is not appropriate when the destruction is not intentional. *See, e. g., Vick v. Texas Employment Commission*, 514 F.2d 734, 737 (5th Cir. 1975) (records destroyed under routine procedures well in advance of claimant's service of interrogatories seeking information from records); *In re Grace Line, Inc.*, 517 F.2d 404, 409 (2d Cir. 1975) (no showing that disappearance was attributable to opponent); *Haynes v. Coca Cola Bottling Co.*, 39 Ill.App.3d 39, 46, 350 N.E.2d 20, 26 (1976) (soft drink can discarded by clean-up personnel of attorney's office without his authority); *Jagmin v. Simonds Abrasive*

---

1. *See, e. g.*, § 719.3, The Code 1979, which provides for criminal penalties for this means of obstructing justice; McCormick on Evidence § 273, at 660–61 (2d ed. 1972).

2. McCormick, *supra*, at 660–61.

*Co.*, 61 Wis.2d 60, 81, 211 N.W.2d 810, 821 (1973) (no showing of deliberate destruction; doctrine "reserved for deliberate, intentional actions and not mere negligence even though the result may be the same as regards the person who desires the evidence"). Other authorities are in accord. *See* 1 Jones on Evidence §§ 3.90, 3.93, at 321, 329 (6th ed. 1972); 1 Wharton's Criminal Evidence § 117, at 197 (13th ed. 1972). The inference and the scope of its application are discussed at 31A C.J.S. *Evidence* § 152, at 388 (1964):

> Spoliation of evidence implies a consciousness of guilt so that the presumptions to be drawn from such conduct are not limited to the particular evidence but may pervade the entire case. Presumptions arising from the spoliation of evidence are not conclusive and may be rebutted by evidence explaining the tampering or by establishing facts contrary to those inferred from the tampering.

*See also* 29 Am.Jur.2d *Evidence* § 177, at 221 (1967) (inference not proper if destruction not intentional or if merely destroyed as matter of routine procedure).

As applied to the facts of this case, the destruction of the tape might justify the unfavorable inference if it was intentional; if it was not intentional, the destruction would be irrelevant. This instruction was requested by the defendant:

> There has been evidence adduced that the State destroyed two tape recordings of telephone conversations that the Defendant had after he was arrested and while in custody. The State destroyed these recordings two days after Defendant, by and through his attorney, requested their production.
>
> You are instructed that there is a presumption that evidence destroyed by the State would be, if produced, adverse to the State and favorable to the Defendant. This presumption may be rebutted by other competent evidence, but if uncontradicted, the presumption is satisfactory proof of the matter in question.

This requested instruction was refused by the trial court on the basis that there was no evidence of intentional destruction.

The court of appeals held that the trial court erred in refusing to permit some inference from the destruction, even if it was not intentional. It said:

> Here there is no evidence of deliberate destruction of the tapes for the purpose of preventing their production. Nevertheless the State is accountable for the result.

> . . . . .

> We do not approve of defendant's requested instruction but find that an instruction should be given that spoliation of evidence creates an inference that the evidence would not have supported the charge against defendant.

We disagree with this resolution of the problem. Neither the rationale of the spoliation inference nor any authorities found support submission of the inference in the case of unintentional destruction. Here the trial court had refused the spoliation instruction requested by defendant and also refused to permit his attorney to argue the matter of the missing tapes to the jury, saying "there [was] no evidence . . . in the record to indicate that the prosecution in any way initiated or caused the destruction . . . of the tape . .," and therefore he would not "allow the defendant to imply [in closing argument] any intentional destruction of said tapes by the prosecution." It is true there was no direct evidence of intent to destroy. However, the defendant did not concede that the destruction was unintentional. The stipulation of the parties stated the tape was destroyed "by the State of Iowa" two days after defendant requested its production. The jury, if the issue had been presented to it, might have inferred from the circumstances that the destruction was deliberate. Thus, the issue becomes whether this inference of intent in the destruction was strong enough to require submission of the spoliation inference to the jury and, if so, did the court err in refusing it. (Defendant does not raise the issue on appeal of the trial court's refusal to permit argument of the concept to the jury.)

■ A consideration of arguments proposed in favor of a fairly restrictive application of such inferences [3] leads us to conclude that the issue should not be submitted to a jury merely upon a claim of spoliation made by a party, but only where substantial evidence exists to support findings that such evidence had been in existence, in the possession of or under control of the party, that it would have been admissible at trial, and that the party responsible for its destruction did so intentionally. *See* McCormick, *supra*, at 661; 2 Wigmore on Evidence § 291 (3d ed. 1940).

■ We have determined that a similar rule permitting an inference from failure to call a witness should be "applied with caution and there must be a reason for such a supposition and a factual area within which it may logically operate. The supposition must rise above the level of a mere possibility." *State v. Turley*, 239 N.W.2d 544, 545 (Iowa 1976) (defendant's requested instruction denied); *accord, Crosser v. Iowa Department of Public Safety*, 240 N.W.2d 682, 685 (Iowa 1976); *State v. Thomas*, 162 N.W.2d 724, 728 (Iowa 1968); *State v. Parker*, 261 Iowa 88, 101, 151 N.W.2d 505, 513 (1967); McCormick, *supra*, at 657. The inference from failure to call a witness is not to be applied where the absence is explained. *State v. Williams*, 261 Iowa 1133, 1139, 155 N.W.2d 526, 530 (1968) (police officers not called at trial shown to be on vacation).

■ Perhaps because of policy considerations or perhaps because of the relatively vague nature of the inferences from missing evidence,[4] it appears that the issue of whether or not to apply them in a particular case lies largely in the discretion of the trial court. *United States v. Miranda*, 526 F.2d 1319, 1331 (2d Cir.), *cert. denied*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1975); *United States v. Ferguson*, 162 U.S.App. D.C. 268, 275, 498 F.2d 1001, 1008 (1974); *United States v. Llamas*, 280 F.2d 392, 393 (2d Cir. 1960); *State v. Tellock*, 273 Minn. 512, 514, 142 N.W.2d 64, 66 (1966). See also McCormick, *supra* at 659. As stated in *Burgess v. United States*, 142 U.S.App.D.C. 198, 206, 440 F.2d 226, 234 (1970),

> [w]hen thus an instruction is sought [on a missing witness] which in a sense creates evidence from the absence of evidence, the court is entitled to reserve to itself the right to reach a judgment as wisely as can be done in all the circumstances . . . .

■ The sufficiency of the foundation for such inferences must first be determined by the court. *Id.; United States v. Free*, 141 U.S.App.D.C. 198, 202–03, 437 F.2d 631, 635–36 (1970) (missing witness). In discussing the role of the trial court in cases involving the similar problem of missing witnesses, a federal court has said:

> As in instances of other sought-after inferences, it is the court's function to determine whether a jury could appropriately deduce from the underlying circumstances the adverse fact sought to be inferred, leaving it for the jury to say whether the inference actually ought to be drawn in the particular case. The noncalling party's explanation suffices, and the missing witness rule is properly rejected, where the trial judge is "satisfied that the circumstances thus offered would, in ordinary logic and experience, furnish a plausible reason for nonproduction."

. . . . .

---

**3.** *See, e. g.*, McCormick, *supra*, at 657, where the problems of a related concept, failure to call a witness, are discussed:

> Possible conjecture or ambiguity of inference is often present. The possibility that the inference may be drawn invites waste of time in calling unnecessary witnesses or in presenting evidence to explain why they were not called. Anticipating that the inference may be invoked entails substantial possibilities of surprise. (Footnotes omitted.)

**4.** *See, e. g.*, McCormick, *supra*, at 661:

> A question may well be raised whether the relatively modest probative value of this species of evidence is not often outweighed by its prejudicial aspects. . . . It may well be that the real underpinning of the rule of admissibility is a desire to impose swift punishment [for the failure to furnish the evidence], with a certain poetic justice, rather than concern over niceties of proof.

. . . Where there are such reasons [for nonproduction], and they are produced and satisfy the trial judge on plausibleness, the judge should decline a request for a missing witness instruction, and should also forbid adverse comment to the jury on the absence of the witness. *Burgess*, 142 U.S.App.D.C. at 209–10, 440 F.2d at 237–38, quoting from 2 Wigmore on Evidence § 290, at 178 (3d ed. 1940).

We believe these principles are properly applied to requests for an inference instruction on alleged spoliation. The threshold determination should be made by the trial court, and only if it is unsatisfied by the explanation of nonproduction should the issue be submitted to the jury.

■ The defendant did not contend the destruction was deliberate. The trial court stated it was so certain of the nondeliberate nature of the destruction that it declined an offer by the State to call a witness from the police department to establish it. The timing of the pretrial request for production and the destruction of the evidence, through inference, was the only evidence of intent, and the trial court decided it was not sufficient to submit the spoliation instruction. We are satisfied that the trial court did not abuse its discretion in refusing the requested instruction, and that his determination that the requisite intent was lacking was adequately supported in the record. The court of appeals decision must be vacated on this issue.

■ II. *Foundation of Blood Test.* Defendant objected to admission of the results of the chemical blood test on two grounds: (1) failure to show that the needle used to extract the blood was sterile and (2) an insufficient showing of chain of custody. It is true that a prerequisite to admission of the results of a chemical blood test is a showing that the needle used to extract the blood was sterile. See § 321B.4, The Code 1977; *State v. Shelton*, 176 N.W.2d 159, 161 (Iowa 1970); *Lessenhop v. Norton*, 261 Iowa 44, 52–53, 153 N.W.2d 107, 111 (1967). However, a review of the evidence reveals that this foundational requirement was met. The nurse who extracted the blood testified that a sealed packet contained the syringe, that the contents of the packet were sterile, that the seal had not been broken prior to its use, that the instrument was sterile and that the specimen was sealed after it was taken. A police officer who witnessed the withdrawal of blood testified that this kit was handed by him to the nurse and that it was sealed at that time. This testimony was sufficient to establish the sterile condition of the needle.

The blood sample was taken on February 16, 1979. It was mailed by Trooper Simonson to the bureau of criminal investigation laboratory. Howard Birnbaum, a B.C.I. chemist, testified that on February 20 he received the vial of blood from Marcia Morton, an evidence clerk. Ms. Morton did not testify at the trial. However, Mr. Birnbaum testified that the normal procedure at the laboratory is for an evidence clerk to receive all incoming evidence and assign it to an analyst. He also testified that the facility is locked at all times, including during working hours. Defendant claims that Ms. Morton's failure to testify concerning the time the blood vial was in her possession constitutes a fatal break in the chain of custody.

■ The prosecution is required to show sufficient custody of physical evidence to establish that the article presented at trial is the same one taken from the defendant and that it has not been altered by intermeddlers. Thus, a "[t]rial judge determines the sufficiency of physical evidence identification in light of the article's nature, circumstances surrounding its custody and the likelihood of intermeddlers tampering with it." *State v. Bakker*, 262 N.W.2d 538, 543 (Iowa 1978). The more susceptible an article is to alteration or substitution, the higher the showing of chain of custody required. *Id.* The level of custody required is that which "mak[es] it reasonably probable that tampering, substitution or alteration . . . did not occur." *Id.* "Contrary speculation affects the weight of the evidence but not its admissibility." *State v. Lunsford*, 204 N.W.2d 613, 617 (Iowa 1973).

Our inquiry in reviewing the trial court's determination of sufficiency is for a clear abuse of discretion. *Id.; Bakker*, 262 N.W.2d at 543.

This case is very similar to *State v. Kantaris*, 280 N.W.2d 389 (Iowa 1979). Both involved substances highly susceptible to tampering. In both the only alleged break in custody was the failure of the B.C.I. evidence clerk to testify at trial. We noted that the prosecution was aided by the presumption that a state employee would not tamper with the evidence and sustained the trial court's ruling. *Id.* at 392; *see also State v. Branch*, 222 N.W.2d 423, 426 (Iowa 1974). We adhere to the reasoning of those cases.

III. *"Guilt or Innocence" Instruction.* Instruction Number 1 provided in part:

> You are to determine defendant's guilt or innocence from the evidence received and the law as given to you in these instructions.

Defendant objected to the use of the word "innocence." He argued that the jury should have been charged with the duty of finding defendant "guilty or *not guilty.*"

 Instructions are not to be considered separately; they are to be construed as a whole. *State v. Templeton*, 258 N.W.2d 380, 383 (Iowa 1977). The defendant's requested language was used in another instruction which stated that the "duty of the jury is confined to determining whether or not the defendant is guilty." Also, the alternative verdict forms were "guilty" and "not guilty." Defendant's assertion of prejudice from this one instance of the use of the word "innocence" is unpersuasive.

Defendant raises the spectre of the jury misconstruing the instruction to mean that conviction could rest either on the state's proving defendant's guilt or on the defendant's failure to prove his innocence. We do not see how use of the word "innocent" rather than the words "not guilty" significantly augment this possibility. Additionally, we believe any such consequence was averted by the submission of instructions on the presumption of innocence and on the state's burden of proof. Defendant also claims that innocent is not equivalent to not guilty, relying primarily on the fact that the legal definition of the word appears third in the list of definitions in a dictionary. He argues that the jury could have erroneously applied one of the other definitions of the word in determining his client's innocence. We do not believe a rational jury sitting in a criminal case would apply anything but the accepted legal meaning of the word under the circumstances.

IV. *Instruction Regarding Inferences from Defendant's Operation of the Motor Vehicle.* This precise issue was decided contrary to defendant's argument in *State v. Hepburn*, 270 N.W.2d 629, 630 (Iowa 1978). We adhere to the ruling in that case that the instruction did not unduly emphasize the evidence of defendant's manner of operation of the vehicle.

██ V. *Instruction on Credibility.* The trial court gave Iowa Uniform Jury Instruction No. 105 on the credibility of witnesses. Defendant objected to this instruction as constituting an impermissible comment on the evidence, citing *State v. Milliken*, 204 N.W.2d 594 (Iowa 1973). In *Hepburn* we noted that the sort of comment criticized in *Milliken* is that which gives undue emphasis to a particular item of evidence or the testimony of particular witnesses. 270 N.W.2d at 630. The challenged instruction was upheld because its reference to the evidence was "general in nature". *Id.* Similarly, Iowa Uniform Jury Instruction No. 105 is general; it refers to no specific evidence or witness. Therefore, there was no error in its submission.

We conclude there was no error in the trial court on any of the grounds urged. The decision of the court of appeals is therefore vacated, and the judgment of the trial court affirmed.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF TRIAL COURT AFFIRMED.