Reversed and Remanded and Majority and Concurring Opinions filed June
28, 2007








 

Reversed
and Remanded and Majority and
Concurring Opinions filed June 28, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00381-CR

____________

 

THE STATE OF TEXAS, Appellant

 

V.

 

JOSE GARCIA VASQUEZ, Appellee

 



 

On Appeal from the 400th
Judicial District Court

Fort Bend County, Texas

Trial Court Cause No. 38,762

 



 

C O N C U R R I N G   O P I N I O N








I concur in the result.  Under Illinois v. Fisher
and Arizona v. Youngblood, absent bad faith, destruction of Apotentially useful@ evidence does not
constitute a violation of due process of law under the Federal Constitution.  See
540 U.S. 544, 547B48, 124 S. Ct. 1200, 1202 (2004) (per
curiam); 488 U.S. 51, 57B58, 109 S. Ct. 333, 337 (1988).  As noted by the
majority, most intermediate appellate courts interpreting the due course of law
clause of the Texas Constitution hold the clause offers no greater protection
than does the due process clause of the Federal Constitution.  See
majority op. at 10B11 (citing cases).  Thus, I agree that
suppression of the interpretive evidence is not constitutionally mandated in
this case.  I write separately, however, to express my concern about limited
relief available to defendants who must confront expert testimony interpreting
tests conducted by the State on physical evidence the State has lost or
destroyed.  It is my considered opinion that the trial court may exercise its
broad discretion to employ a spoliation instruction in such cases.








The instant case arises at a time when Texas has achieved
an international reputation for its flawed crime lab processes, misrepresented
results, and lost or destroyed evidence.  See, e.g., Amnesty International, USA(Texas):
Death penalty/Legal concern, Willie Marcel Shannon (m), Nov. 2, 2006,
http://web.amnesty.org/library/index/ENGAMR511672006?open&of=ENG‑USA
(last visited June 13, 2007) (referring to Houston Police Department=s 1997 destruction of DNA evidence); Reprieve Annual Report 2004 at 10,
http://www.reprieve.org.uk/images/Annual%20Report.pdf (last visited June 18,
2007) ( in report of United Kingdom charity protecting the human rights of
people facing the death penalty, describing case of investigation raising
further questions about reliability of DNA testing at Houston Crime Lab).[1]  In this milieu,
one cannot presume the reliability of the State=s evidence
purporting to provide or interpret the results of forensic tests on tangible
materials.  See Ellen Marrus, Suspicious Finds B How to Make
the Crime Lab Come Clean, Hous.
Chron., June 16, 2006,
http://www.chron.com/disp/story.mpl/editorial/outlook/4896319.html (last
visited June 18, 2007) (arguing placement of crime labs within enforcement
agencies is one factor contributing to falsification of evidence nationally). 
A defendant therefore has a legitimate interest in conducting his own tests on
any sample the State may use to gain a conviction.  He also has statutory
authorization to do so.  See Gabriel v. State, 900 S.W.2d 721, 722 (Tex.
Crim. App. 1995) (citing Texas Code of Criminal Procedure article 39.14 for
proposition, to rebut expert=s chemist=s conclusion all
baggies contained cocaine, defendant could have conducted independent tests on
substances contained in baggies not included in State=s random tests). 
If the State intends to use physical evidence it alone has tested, I join the
majority in concluding the State has a responsibility to preserve that
evidence.[2]








At present, however, the State has little incentive to
prevent accidental loss or destruction of inculpatory evidence a defendant
might want to subject to independent testing.  Such evidence is deemed only
potentially useful evidenceCAevidentiary material of which no more
can be said than that it could have been subjected to tests, the results of
which might have exonerated the defendant.@  Youngblood, 488 U.S. at 57,
109 S. Ct. at 337. Under Fisher and Youngblood, the due
process clause provides a defendant with no protection and no remedy when the
State destroys or loses potentially useful evidence but does not act in bad
faith.  See Fisher,
540 U.S. at 547B48, 124 S. Ct. at 1202; Youngblood,
488 U.S. at 57B58, 109 S. Ct. at 337.   Absent bad faith, a due process violation occurs
only when the State loses or destroys material, exculpatory evidence.  See
Fisher, 540 U.S. at 547B48, 124 S. Ct. at 1202.  Similarly, to be
entitled to a spoliation instruction allowing the jury to infer lost or
destroyed evidence would have produced a result favorable to the defense, a
criminal defendant must affirmatively show the evidence was favorable and
material to the defense.  White v. State, 125 S.W.3d 41, 43B44 (Tex. App.CHouston [14th
Dist.] 2003), pet. ref=d, 149 S.W.3d 159 (Tex. Crim. App. 2004).[3] 
Given these limitations, a spoliation instruction would rarely, if ever, be
useful to a criminal defendant because, if the lost or destroyed evidence were
material and exculpatory, he would have a more meaningful remedy under the due
process clause.

A spoliation instruction, however, should not be limited to
an adverse inference that the lost or missing evidence is favorable to the
defendant.  Although the evidentiary function is important, a spoliation
instruction serves other purposes as well.  As Justice Baker explained in the
civil context: ARemedies for the spoliation of evidence
serve three purposes.  First, they punish the spoliator for destroying relevant
evidence.  Second, they deter future spoliators.  And third, perhaps most
importantly, they serve an evidentiary function.@  Trevino v.
Ortega, 969 S.W.2d 950, 954 (Tex. 1998) (Baker, J., concurring) (citations
omitted).








Arguably, a trial court should give an adverse inference
instruction only when there is some indication the spoliator acted in  bad
faith.  See United States v.
Wise, 221 F.3d 140, 156 (5th Cir. 2000) (AAn adverse
inference drawn from the destruction of records is predicated on bad conduct.@); State v.
Langlet, 283 N.W.2d 330, 333 (Iowa 1979) (ANeither the
rationale of the spoliation inference nor any authorities found support submission
of the inference in the case of unintentional destruction.@); see also
State v. Hartsfield, 681 N.W.2d 626, 632C33 (Iowa 2004) (indicating, in order for destruction
to be intentional, factfinder must be able to conclude State=s actions were an admission
evidence was unfavorable to its case); but see Trevino, 969 S.W.2d at
957 (Baker, J., concurring) (AWhile allowing a court to hold a party
accountable for negligent as well as intentional spoliation may appear
inconsistent with the punitive purpose of remedying spoliation, it is clearly
consistent with the evidentiary rationale supporting it because the remedies
ameliorate the prejudicial effects resulting from the unavailability of
evidence.@); Anderson v. Litzenberg, 694 A.2d 150, 156
(Md. 1997) (stating adverse presumption may arise against spoliator even if
there is no evidence of fraudulent intent).  Premising an adverse inference
spoliation instruction on bad faith is consistent with the rationale underlying
the instruction, i.e., that the destruction reflects consciousness of a
weak case, an admission by conduct.  See Langlet, 283 N.W.2d at 333.[4]

In consideration of the fact that the blood sample was
destroyed long before Vasquez=s request for independent testing, the
trial court cannot be faulted for finding an absence of bad faith in the
instant case.  At most the State was negligent.  I would therefore not urge the
court to give an adverse inference spoliation instruction.

In the exercise of its discretion, however, the trial court
could, instruct the jury, when weighing the evidence in the case, to consider the
State=s destruction of
the blood sample and the defendant=s resultant
inability to conduct his own independent test to assess the reliability of
results produced by an agency of the State.  In the trial court, the prosecutor
acknowledged, as a result of the destruction of the blood sample, that defense
counsel now had Aan argument to present to the jury . . .
to perhaps put some doubt in someone=s mind that maybe
he should have been able to test it, maybe they should doubt it or whatever.@  This argument is
always available to a criminal defendant; however, I believe the trial court
has an important role in fashioning spoliation remedies calculated to encourage
or coerce the State to preserve the evidence.








A[T]he unique problems seen in Texas during
the last decade provide considerable impetus toward a conclusion that >fundamental
fairness= demands
preservation of potentially exculpatory evidence.@  Pena v. State,
___ S.W.3d ___, No. 10-03-00109-CR, 2007 WL 1289426, at *13 (Tex. App.CWaco May 2, 2007,
pet. filed).  Indeed, the majority recognizes the State=s Aimportant duty to
preserve evidence in its possession.@  Majority op. at
11.  By punishing the State=s negligent conduct in failing to preserve
the blood sample, a court might discourage or deter spoliation.  See Trevino,
969 S.W.2d at 957 n.1 (Baker, J., concurring).

On remand, the trial court has discretion to include a
spoliation instruction.  See Wise, 221 F.3d at 156 (stating district
court has discretion to admit evidence of spoliation and to instruct jury on
adverse inferences); see also Trevino, 969 S.W.2d at 959, 960
(Baker, J., concurring) (stating, in civil context, trial courts have broad
discretion in choosing appropriate sanction and in instructing juries).  Such
an instruction might include, but should not necessarily be limited to the
following: (1) the State had a duty to preserve the blood sample; (2) the State
failed to preserve the blood sample, thereby precluding the defendant from obtaining
independent tests, and (3) when determining reliability of the State=s expert
testimony, you may consider the fact that defendant was precluded from testing
the blood sample.

Finally, I recognize that the issue
of a spoliation instruction is not presented in this appeal.  However, I have
addressed this very important matter with the hope that our criminal
jurisprudence will evolve and provide remedies sufficient to insure fundamental
fairness, a proper goal of all courts.

 

 

 

/s/      Charles Seymore

Justice

 

 

Judgment rendered
and Majority and Concurring Opinions filed June 28, 2007.

Panel consists of
Justices Frost, Seymore, and Guzman. (Frost, J. Majority.)

Publish C Tex. R. App. P. 47.2(b).









[1]    See also Pena v. State, ___
S.W.3d ___, No. 10-03-00109-CR, 2007 WL 1289426, at *10 (Tex. App.CWaco May 2, 2007,  pet. filed) (citing examples of
wrongful Texas convictions based on faulty DNA identification evidence); Roma
Khanna & Steve McVicker, Doubt Cast on Hundreds More Cases from HPD Lab,
June 14, 2007, at A1, A21 (describing events at the Houston Police Department
Crime Lab from December 2002 until present); Jordan Smith, Anthony Graves
Update: Evidence Reappears, The
Austin Chron., May 11, 2007,
http://www.austinchronicle.com/gyrobase/Issue/story?oid=oid:473702 (last
visited June 13, 2007) (describing discovery of cache of evidence in
welded-shut jail cell); Jim Kennett, Houston Crime Lab=s Fake Results May Undermine Prosecutors,
http://www.bloomberg.com/apps/news?pid=10000103&sid=aR0VRkE32Te0&refer=us
(last visited June 13, 2007) (referring to investigator=s report of Afaked
results@ by crime lab chemists);  Barbara Bradley, Profile: 
DNA Testing in Crime Cases Causing Distrust in the Criminal Justice System,
(NPR Morning Edition, Aug. 29, 2000), transcript available at 2000 WLNR
9636095 (describing destruction of fifty rape kits in Texas after prisoner was
exonerated on basis of DNA tests).





[2]  Commendably, the Texas Legislature has acknowledged
and partially responded to problems with the testing of bodily material.  Texas
Code of Criminal Procedure chapter 64 provides for post-conviction DNA testing
of evidence containing biological material.  See Tex. Code Crim. Proc. Ann. arts. 64.01B.05 (Vernon 2006).  AIn a criminal case in which a defendant is convicted,@ Texas Code of Criminal Procedure article 38.43
requires the State to Aensure the preservation of evidence@ containing biological material relating to the
identity of the offender.  Tex. Code Crim. Proc. Ann. art. 38.43(a) (Vernon
Supp. 2006).  Article 38.43 applies to evidence that (1) was in the State=s possession during prosecution of the case and (2) Aat the time of conviction was known to contain
biological material that if subjected to scientific testing would more likely
than not . . . establish the identity of the person committing the offense;  or
. . . exclude a person from the group of persons who could have committed the
offense.@  Id. art. 38.43 (b).  I have two responses to
this legislation.

First, I interpret the State=s post-conviction duty to preserve evidence containing
biological material, a fortiori, to create a duty to preserve such evidence
prior to, and during, the prosecution of the case.  Were it otherwise, Chapter
64 and article 38.43 would be hollow assurances indeed. 

Second, I urge the legislature to extend
the preservation duty to all physical evidence when (1) the State is the sole
agency testing the evidence and (2) the evidence is essential to establishing
an element of the offense.  Establishing the elements of the offense and the
defendant=s identity are equally part of the State=s case.  See Jones v. State, 687 S.W.2d 430,
432 (Tex. App.CHouston [14th Dist.] 1985, no pet.) (stating first
element of a crime is that there exist a person who commits the offense).  I
can think of no principled reason why the State=s duty to preserve evidence of the elements should differ from its duty
to preserve evidence of identity.





[3]  In the most recent legislature, Representative
Turner introduced a bill requiring a trial court to give an adverse inference
spoliation instruction when evidence was unavailable in a criminal case because
the evidence was lost or destroyed while in the State=s possession.  Tex.
H.B. 1144, 80th Leg., R.S. (2007).  The bill was referred to committee.  H.J.
of Tex. 80th Leg., R.S.414
(2007).





[4]  Of course, limiting the adverse inference
instruction to situations involving bad faith reduces its usefulness to a
defendant in the same way as limiting it to situations involving favorable,
material evidence.