# IN THE COURT OF APPEALS OF IOWA

No. 22-0032
Filed February 8, 2023

**TRACIE LYNN TURNER,**
    Plaintiff-Appellant,

**vs.**

**HY-VEE, INC., d/b/a HY-VEE FOOD STORE,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

Turner appeals the jury verdict assigning her 98% fault in a parking lot fall case. **AFFIRMED.**

Pete Leehey of The Biker Lawyers, P.C., Cedar Rapids, for appellant.

Terry J. Abernathy, Matthew G. Novak, and Bradley J. Kaspar of Pickens, Barnes & Abernathy, Cedar Rapids, for appellee.

Considered by Bower, C.J., and Greer and Badding, JJ.

**GREER, Judge.**

After falling in a Hy-Vee store parking lot, Tracie Turner brought a premises liability action seeking damages for her injuries. She claimed the store staff was negligent in its inspection and maintenance of the lot. Hy-Vee argued Turner was the cause of her fall and the jury essentially agreed, assigning Turner fault of 98%. Now on appeal, Turner requests a review of several pre-trial discovery rulings she believes required the imposition of sanctions and several trial rulings she contends impacted the jury verdict.

More specifically, she argues the district court abused its discretion by failing to sanction Hy-Vee for discovery abuse and failing to award her attorney fees; she seeks a remand on these issues. In her request for a new trial, Turner alleges she should have been able to impeach the Hy-Vee witnesses with their discovery abuses, including a missing video and a destroyed internal store report. Lastly, she contends the district court erred by failing to instruct the jury on spoliation of evidence and negligence per se because of building code violations. We consider her allegations and affirm.

**Factual Background.**

In the early fall of 2015, after shopping in a Hy-Vee store, Turner pushed her small shopping cart towards her vehicle in the parking lot. According to Turner, as she headed towards her vehicle at around 8:00 p.m., the cart hit a rise in the pavement, which caused her and the cart to tip over. Turner returned to the store and reported her fall to assistant manager Cale Oltmanns and showed him where she had fallen. Several days later, human resource manager Linda

Pochobradsky[1] spoke with Turner to see how she was doing. A claim risk manager for Hy-Vee, Angela Hinz, also tried to interview Turner, but Turner never called her back. Then, almost two years after the fall, Turner brought suit against Hy-Vee.

During the work up to trial, Turner filed several motions to compel discovery. Important to the issues here, the central focus of the motions was to compel production of a "night note"[2] and a surveillance video of the parking lot from the evening of the fall. These requests were met with a response that the note and video no longer existed. Turner also asked for sanctions because Hy-Vee did not disclose surveillance photographs of Turner and her counsel socializing. The district court ruling on the discovery motion required disclosure or an explanation by Hy-Vee if items could not be disclosed. But as to two photographs taken of Turner and her counsel, the district court ordered that Hy-Vee could not use those undisclosed photographs at trial and further limited any other evidence not yet produced by Hy-Vee. No other sanctions were ordered with the court finding "all other allegations/issues raised in [Turner's] motion have either been previously addressed by the Court or lack sufficient factual support to warrant further action."

During the jury trial, Turner intended to read Pochobradsky's deposition to show Hy-Vee's disregard for the truth over the missing night note and the video, but the district court limited some of the testimony. The district court denied Turner's request for jury instructions on spoliation and negligence per se. Because

---

[1] Pochobradsky passed away before the trial.

[2] The night note refers to daily notes made by the manager on duty that summarizes store activity for the day.

the jury found Turner more than 50% at fault, she recovered no damages. She appeals the jury verdict and adverse rulings.

**Abuse of Discretion and Discovery Sanctions, Including Attorney Fees.**

Over the course of this case, the district court ruled on various discovery deficiencies claimed by Turner; she now appeals from those orders and requests a remand for further proceedings, arguing the district court abused its discretion and should assess additional sanctions, including attorney fees, to comport with the seriousness of the discovery failures.[3] We review discovery rulings for abuse of discretion. *See Vaccaro v. Polk Cnty.*, 983 N.W.2d 54, 57 (Iowa 2022). "An abuse of discretion consists of a ruling which rests upon clearly untenable or unreasonable grounds." *Troendle v. Hanson*, 570 N.W.2d 753, 755 (Iowa 1997). When determining if a sanction is appropriate, the trial court should consider several factors, including one that pertains to this case: "the party's reasons for not providing the challenged evidence during discovery." *Lawson v. Kurtzhals*, 792 N.W.2d 251, 259 (Iowa 2010) (listing this factor and others not pertinent here).

During the litigation, the parties exchanged discovery responses. Among other items, Turner requested production of any accident reports, including the night note prepared by Oltmanns from the night Turner fell. Ultimately, she moved to compel its production. Hy-Vee responded that the night note was no longer available, but Turner contends Oltmanns was never asked to retrieve it and that

---

[3] The list of behavior to sanction included: (1) deceitful discovery responses and denial of the existence of the video of the parking lot, (2) lack of effort to find Oltmanns's night note about the fall, (3) coaching by improper objections in depositions, and (4) delayed production of photographs taken by an investigator of Turner and her counsel. We consider all of these behaviors in our review of the discovery sanction request.

he testified he had not deleted it from his computer and had emailed it to other employees.

Prior to a hearing on the night note discovery concern, Turner again moved to compel discovery, pointing out another discovery discrepancy—while Hy-Vee denied the existence of any accident reports or surveillance video in the area of the fall, it then produced a customer accident notice that indicated the fall was captured on video. Turner demanded production of the video. Hy-Vee disputed that anyone saw the video or that it would even show the fall, but Pochobradsky admitted in her deposition that she watched the video at the time she prepared the accident report. Yet, in its response to the supplemental motion to compel, Hy-Vee denied any dishonesty in answering discovery because Hy-Vee could not confirm that the fall was captured on the video, and even if it were, the video was not preserved given Hy-Vee's retention policy.

Reacting to that response, Turner filed yet another supplemental motion to compel discovery addressing Hy-Vee's untimely objections and inadequate responses to discovery requests. She drilled down on the disappearance or destruction of what she labeled "key" evidence—the video. Turner also took issue with Hy-Vee's late production of "surveillance" photographs taken in August 2019 of Turner and her counsel socializing at a bar.[4] Hy-Vee asserted any surveillance constituted work product, but Turner had requested surveillance materials in discovery. Finally, a hearing was held and the district court gave Hy-Vee thirty-days to "diligently search" for the items requested by Turner and either produce

---

[4] Before disclosing the photographs, Hy-Vee used them in Turner's deposition.

the items or provide an affirmative statement as to the diligent efforts used and the reasons for the unavailability of the items. The order noted sanctions would be imposed if Hy-Vee did not comply. To comply, Hy-Vee certified that:

> The video images can be viewed at the store. They are electronically sent to Hy-Vee's corporate headquarters in West Des Moines. The videos are not available for copying at the store. Requests for copies of videos are made to Hy-Vee's headquarters. Unless a specific request is made for preservation of the videos, they are only maintained for 30 days.

The store representative confirmed the video, if there was one, no longer existed. Hy-Vee also searched for the night note and confirmed that the assistant vice president of IT operations had attempted a full search and could not locate the note in Hy-Vee's computer system.

After several rounds before the district court over discovery disputes, Turner filed for sanctions and the court summarized the discovery history:

> The Court has dealt with discovery issues in this case on multiple occasions. In an Order issued September 5, 2018, the Court partially granted [Turner's] Motion to Compel and ordered [Hy-Vee] to turn over information regarding accident reports, surveillance video and equipment, and the identification of all employees working at the time of the alleged incident. On June 14, 2019, the Court denied a separate Motion to Compel filed by [Turner]. On July 24, 2019, the Court granted [Turner's] Renewed Motion to Compel, which sought other video and photographic evidence along with certain store records. On March 3, 2020, the Court denied two additional Motions to Compel that were mooted by the Court'[s] partial grant of summary judgment in the same order.

With that review of Turner's discovery motions, the district court issued a ruling in August 2020, stating:

> Aside from the issue involving two photographs of [Turner] taken in August 2019 and disclosed to [Turner] and her counsel during [Turner's] February 10, 2020, deposition, all other allegations/issues raised in her motion have either been previously addressed by the Court or lack sufficient factual support to warrant further action.

As a sanction for the failure to disclose the two photographs, the court made specific orders as to that particular discovery dispute,

> 1. [Hy-Vee] will not be permitted to offer, display, or otherwise reference the two August 2019 photographs in their case in chief, cross-examination, or in rebuttal at trial.
> . . . .
> 3. [Hy-Vee] will not be permitted to utilize evidence in this case that has been newly discovered since March 23, 2020, without prior approval of the Court and after a showing of good cause.

There are procedures addressing discovery abuse described under Iowa Rule of Civil Procedure 1.517. But those discovery rules allow for a party to explain if failure to provide discovery was "substantially justified" before sanctions can be ordered. Iowa R. Civ. P. 1.517(2)(5). While the parties skirmished over Hy-Vee's positions around what documents or video it had and what happened to them, we find the district court carefully examined the arguments, accepted the explanations for the failure to produce the missing discovery, and was reasonable in how it handled the resolution of each of the discovery disputes. We find no abuse of discretion and decline to remand related to the discovery disputes.

**Failure to Allow Impeachment Evidence at Trial.**

Because Pochobradsky died before trial, Turner sought to admit several portions of her deposition by reading it at trial. Hy-Vee objected in writing to several parts of the deposition that focused on the discovery fight over the video. Turner filed a written response to the objections simply noting "Regarding Linda Pochobradsky, Plaintiff resists all objections."[5] Although the court asked for further

---

[5] As our supreme court recognized in *Ferris v. Riley*, 101 N.W.2d 176, 182 (Iowa 1960):

argument, she offered no other reasoning except to say "Various things that have been excluded by previous rulings, just to preserve for the record." Turner asserts she should have been allowed to read all requested parts of the Pochobradsky deposition.

We review evidentiary rulings for an abuse of discretion. *Hall v. Jennie Edmundson Mem'l Hosp.*, 812 N.W.2d 681, 685 (Iowa 2012). "A court abuses its discretion when its ruling is based on grounds that are unreasonable or untenable." *Giza v. BNSF Ry. Co.*, 843 N.W.2d 713, 718 (Iowa 2014) (citation omitted).

Before the trial started, the district court struck those sections addressing the discovery disputes. Now, Turner asserts the district court abused its discretion by failing to allow her to impeach Pochobradsky by alerting the jury that Hy-Vee had been "untruthful" or "misleading" in discovery over the night note and the possibility of a video of the fall. Turner argues this abuse of discretion should be remedied by a grant of a new trial.

But first, Hy-Vee argues that Turner failed to preserve error on this subject and, even if she had, there was no abuse of discretion by the district court because Hy-Vee admitted the areas of proof Turner sought to discuss. To confront the error-preservation argument, Turner points to an offer of proof filed after the presentation of her evidence. "If [a district court] ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was

---

It may be that in the courtroom scenes popularly, and generally inaccurately, portrayed on television and radio, a mere "I object" or "objection" is sufficient; but it is the good fortune of the trial courts in Iowa that something specific and definite is required, and that reversible error may not be predicated upon an objection which does not tell the court the ground upon which it is based.

apparent from the context." *Eisenhauer v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 17 (Iowa 2019) (citing Iowa R. Evid. 5.103(a)(2)). Along with addressing exhibits excluded from Pochobradsky's deposition, the written offer of proof detailed: "[Hy-Vee] clearly made untruthful and deceptive discovery responses, some which were verified as truthful by [Pochobradsky], others which, although not verified, [Pochobradsky] had personal knowledge of the fact that some of Hy-Vee's discovery responses were untruthful." But the written offer of proof came after Turner had rested her case and provided no substantive arguments to address the earlier general objection made. *Cf. Summy v. City of Des Moines*, 708 N.W.2d 333, 338 (Iowa 2006), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016) ("Error preservation does not turn, however, on the thoroughness of counsel's research and briefing so long as the nature of the error has been timely brought to the attention of the district court."). Even though the offer of proof contained no detailed arguments, Turner contends the district court had earlier ruled and could have taken corrective action to admit the evidence during trial without any further nuanced arguments by her. And, Turner points us to her motion for new trial where there were more detailed arguments over why the impeachment evidence should not have been excluded. But, again, this came too late for corrective action by the court. *See* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 42–43 (2006) (noting policies underlying error preservation disfavor "revers[ing] a trial court based on arguments not before it"). We agree with Hy-Vee that Turner failed to preserve error on the denial of her request to admit some sections of the Pochobradsky deposition.

But even if she had preserved error, we do not find that the district court committed reversible error. Essentially, in her deposition, Pochobradsky confirmed she had prepared an accident report and did not know why the discovery indicated that one did not exist and she admitted there was a video of the incident that existed at one time. Turner argued the testimony could be used to impeach Pochobradsky and attack her credibility as a witness. *See Eisenhauer*, 935 N.W.2d at 19–20 (finding continuing medical education records should have been admitted for the purpose of impeaching doctor's qualifications, but because other evidence of the doctor's lack of expertise was admitted, the court's error was harmless). Here, Turner argued to the jury her suspicions over the missing video and addressed the delay in obtaining the various accident reports, so Turner cannot show prejudice even if the testimony should have been admitted. *See id.* at 19 (finding that any error in excluding the evidence of the doctor's lack of experience was harmless because other evidence presented weakened the credibility of the doctor, so the exclusion did not affect the requesting party's substantial rights). Even more, Hy-Vee admitted that Turner fell and that there had been a video of the fall that no longer existed.

Thus, we find Turner did not preserve error on this claim. But even if she did, it would not warrant a new trial because prohibiting Turner from using the deposition testimony over the discovery dispute about the video and accident reports did not affect Turner's substantial rights.

**Failure to Instruct on Spoliation of the Video and Night Note.**

Pointing to Hy-Vee's inability to produce the night note prepared after talking with Turner and the video from the night of the fall, Turner requested a jury

instruction on spoliation of evidence. In *Alcala*, our supreme court made it clear that when reviewing the court's refusal to instruct on spoliation, which involves a discretionary component, we apply an abuse of discretion standard. 880 N.W.2d at 707 (noting that "because the [spoliation] instruction 'acts as a discovery sanction and discovery sanctions are discretionary,'" an abuse of discretion standard should be applied).

Turner argued that Pochobradsky viewed the video to complete the accident report she filled out, knowing there was a potential claim. Thus, Turner contends any destruction of the video or accident reports after that point would presumably involve Hy-Vee's intentional action. Hy-Vee argued that before the spoliation instruction could be given, Turner had to establish that the company intended to destroy the video and the night note. But the company, or its representatives, did not hear from Turner from November 2015 to September 2017—when Turner filed suit—even though contact was attempted. Thus, the passage of almost two years before litigation was initiated explained Hy-Vee's failure to specifically retain the video or the report given their normal retention history. In its ruling on this issue, the district court noted:

> But the evidence that I heard in this trial was a combination of some mistakes in how this video was logged and the timeframe from when [Hy-Vee]was aware—they're aware of the accident when it initially happened, but when it was then reported and turned into something that turned into litigation, there was a substantial passage of time there that answers a question for me that, given that passage of time and how the reporting of the incident to Hy-Vee and the follow-up by [Turner], shows it wasn't reasonable for Hy-Vee to anticipate litigation at the start of this matter given those circumstances.
> And then the process by which they got to the point of passing this on to their risk management folks and the testimony I heard regarding the references or lack thereof to the video, at best, rise to

negligence and not intent. So I will not be giving the spoliation instruction.

Likewise, the district court made it clear to Turner that although she had not met the proof requirements for a spoliation instruction, she was still free to argue about the video and whether it existed or not.

To garner a spoliation instruction, Turner had to generate a jury question on the spoliation inference by showing: "(1) [the] evidence exists, (2) it is in the possession or under the control of [Hy-Vee], (3) it would have been admissible at trial, and (4) [Hy-Vee] *intentionally* destroyed the evidence." *See State v. Hartsfield*, 681 N.W.2d 626, 631 (Iowa 2004) (emphasis added). There must be substantial evidence to support the spoliation inference. *State v. Langlet*, 283 N.W.2d 330, 335 (Iowa 1979). "Neither the rationale of the spoliation inference nor any authorities found support submission of the inference [of spoliation] in the case of unintentional destruction." *Id.* at 334.

We agree with the district court that there was not substantial evidence of intentional destruction of the video and night note. Hy-Vee provided information of their regular process involving the retention of these two pieces of evidence. *See Hartsfield*, 681 N.W.2d at 632 (recognizing "evidence destroyed under a neutral record destruction policy is not considered intentionally destroyed so as to justify a spoliation instruction"). And Hy-Vee did not hear from Turner again for almost two years following the fall, which explained the strained memories whether a video even existed and what it might show as opposed to any intentional destruction of the contents of the video. The refusal to instruct on spoliation was not an abuse of discretion.

**Failure to Instruct on the State Building Code.**

Finally, Turner requests a new trial because the district court erred in not instructing the jury on negligence per se based on the building code standards. Turner requested the following instructions:

> 700.10 Safety Code—Negligence Per Se. The state building code requires that vertical height variances in Hy-Vee's parking lot be no greater than 1/4 inch.
> A violation of this law is negligence.

and

> 700.10 Safety Code—Negligence Per Se. The state building code requires that light levels in Hy-Vee's parking lot be no less than 1 foot candle at the walking surface.
> A violation of this law is negligence.

Our standard of review concerning alleged errors involving jury instructions is for the correction of errors at law. *Banks v. Beckwith*, 762 N.W.2d 149, 151 (Iowa 2009). "Iowa law requires a court to give a requested jury instruction if it correctly states the applicable law and is not embodied in other instructions." *Alcala*, 880 N.W.2d at 707 (citation omitted). But "[i]nstructional errors do not merit reversal unless prejudice results." *Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 592 (Iowa 2015). "Prejudice occurs and reversal is required if jury instructions have misled the jury, or if the district court materially misstates the law." *Id.*

Turner did offer a photograph showing a height variance of one-half to three-quarters inches in the parking lot where she fell. But as to any standards presented in the evidence, when discussing the objections to Turner's architect's testimony, by agreement of the parties the district court narrowed the deposition testimony so that Turner's architect expert only opined "Even at one-half inch [variance], the installation would not comply with standards." But nothing

submitted to the jury identified any specific standards or code violations as it specifically related to the parking lot.  In her appellate brief, Turner references several sections of the state building code, but again there was no connection made at trial by an expert between these provisions and the area of the fall.

Hy-Vee asserts Turner only attempted to introduce inapplicable building code regulations that were not pertinent to the parking lot.  Whether certain industry standards apply to a particular area are fact questions.  *Alcala*, 880 N.W.2d at 710–11.  The district court did not find that the evidence supported giving a negligence per se instruction and reasoned:

> Also, on the objections by [Turner] on the two code instructions that were cited, I'm going to give Instruction Number 19—that's in my packet—which allows the parties to argue whether or not there's been conformity or nonconformity with the codes.
> The instructions suggested by [Turner] are pointing at per se violations of codes that apply to the situation here, and I don't believe we have enough evidence to conclude that there were actual—that these building codes that were cited equate or are applicable, as [Turner] argues, to a situation that requires a—a per se instruction on that.
> Certainly, violations of standards or codes that the jury may have heard of is something that they can come—take into consideration in coming to a decision in whether or not [Hy-Vee] was negligent in exercising its duty of care or fixing its parking lot or maintaining it or inspecting it, but I'm not going to give a per se instruction because I don't believe it applies.

Given this reasoning, instead of Turner's requested instructions the district court instructed the jury as follows:

> You have received evidence of industry standards and applicable code provisions.  Conformity with code provisions and industry standards is evidence that a party was not negligent and non-conformity of industry standards and codes is evidence that a party was negligent.  Such evidence is relevant and you should consider it, but it is not conclusive proof.

We agree with the district court; the requested instructions were not warranted. There was not a factual connection between those code sections requested and the parking lot area of the fall to support submission of the instructions. Plus, the district court instructed the jury to consider generally any standards or codes and how they might weigh in on Hy-Vee's negligence; so, Turner was allowed to argue the general standards raised by expert testimony at trial.

In sum, because we find there was not substantial evidence to support giving the requested instructions, the district court did not err in denying Turner's request and Turner is not entitled to a new trial.[6]

**Conclusion**.

As to the discovery rulings made before trial, we find the district court did not abuse its discretion on the alleged errors that Turner preserved for appeal. And we find no prejudice to Turner over the exclusion of Pochobradsky's testimony intended to impeach Pochobradsky and Hy-Vee. Finally, the district court did not err in rejecting the spoliation instruction proposed by Turner and the district court's refusal to instruct on negligence per se was not in error. We affirm.

**AFFIRMED.**

---

[6] Plus, even if the court should have given the instructions on building code standards, Turner cannot show she was prejudiced by the alleged error. The jury found Hy-Vee was 2% at fault even without a negligence per se instruction. *See Doty v. Olson,* No. 09-1852, 2010 WL 5050565, at *3–4 (Iowa Ct. App. Dec. 8, 2010) (holding that where there is a finding of negligence, a failure to instruct the jury on negligence per se does not result in prejudice without a showing "the jury's allocation of . . . fault to [the parties] would have been impacted by" the additional instruction).