**STATE of Iowa, Appellee,**

v.

**Napoleon HARTSFIELD, Appellant.**

**No. 02–0635.**

Supreme Court of Iowa.

June 16, 2004.

Linda Del Gallo, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kristin Guddall, Assistant Attorney General, William E. Davis, County Attorney, and Jerald Feuerbach, Assistant County Attorney, for appellee.

TERNUS, Justice.

The defendant, Napoleon Hartsfield, claims the district court erred in refusing to give a spoliation instruction in his trial on assault charges. We agree and so reverse the judgment of conviction and sentence, and remand for a new trial.

## I. *Background Facts and Proceedings.*

On the morning of February 26, 2002, the defendant was in the Scott County jail awaiting transfer to the courthouse for a hearing on an unrelated charge. Hartsfield was not unknown to the correctional officers at the jail. In fact, he had previously sued some of them for alleged civil rights violations, including Jeffrey Phillips, the officer he was accused of assaulting in this case.

At the time in question, Hartsfield was in holding cell 6; the door to this cell opened into the booking area. Earlier in the morning, the defendant had become impatient with the officers because he wanted his clothes brought to him so he could properly dress for his court appearance. He had yelled and knocked on his cell door until his clothes arrived.

Shortly after this matter was handled, Hartsfield began banging on his door again, demanding use of the phone in the booking area. After the defendant refused repeated requests to stop pounding on his cell door, officer Phillips went to the cell door, opened the door to a ninety-degree angle, and stood in front of the doorway to talk with Hartsfield face to face. The defendant also stood in the doorway, but was inside his cell. Hartsfield persisted in demanding the phone, and pointed his finger at Phillips some twelve to eighteen inches from Phillips' face.

At this point, the parties' versions of what happened next vary. Phillips testified at trial that after twice telling the defendant to get his finger out of Phillips' face, Phillips simply pushed the defendant's hand down. Then, according to Phillips, Hartsfield took a swing at Phillips with his other hand, striking Phillips on the left side of Phillips' face.

Although the defendant did not testify at trial, his attorney contended Hartsfield acted in self-defense. (The jury was instructed on the defense of justification.) One of the officers who came to Phillips' aid testified that he recalled Hartsfield complaining that he had been hit in the mouth. The nurse on duty that day observed Hartsfield after the incident and testified that he had a swollen lip and a tooth cut inside of his mouth. Defense counsel argued Hartsfield swung at Phillips only after Phillips assaulted the defendant.

The witnesses agreed that once the initial contact was made, Hartsfield and Phillips began to scuffle, and Phillips pushed Hartsfield into his cell. Two other officers rushed into the cell, knocking everyone onto the bed. Thereafter, the defendant was subdued and handcuffed. After the fracas, Phillips had a red mark on his left cheek. He also complained of a bump on his head from hitting the wall when he fell on the bed, as well as a twisted knee from the fall.

The defendant was charged with assault resulting in bodily injury on a jailor and/or correctional staff, an aggravated misdemeanor. *See* Iowa Code §§ 708.1, .3A(3) (2001). He was tried to a jury, and found guilty of the charge.

Following sentencing Hartsfield filed this appeal. The matter was transferred to the court of appeals, where the judgment was affirmed. We granted further review.

## II. *Issues on Appeal.*

The defendant's attorney requested a spoliation instruction at trial based on the county's erasure of a videotape recording made of the booking area on the day of the alleged assault. The trial court refused to give the requested instruction, and this ruling is assigned as the primary error on appeal.

Although Hartsfield also alleges he received ineffective assistance from his trial counsel, in view of our favorable ruling on the claim of instructional error, we do not reach these allegations. For the same reason, we need not address the defendant's claim that the trial court failed to exercise its discretion when it ordered restitution without considering the defendant's financial situation.

### III. *Preservation of Error.*

The State argues that while the defendant "very generally" raised the spoliation-of-evidence issue at trial, error was not preserved because he "has raised and developed a more specific claim on appeal that was not presented to the trial court." Our evaluation of this assertion is inhibited, however, because the State does not explain the precise variance between the record made at trial and the claimed error on appeal.

We surmise the State may be questioning whether the due process claim asserted on appeal was adequately raised in the district court. Although trial counsel cited a due process case, he made no express mention of a constitutional violation to support his request for a spoliation instruction. We need not further consider this issue, however, because we think the defendant was entitled to the requested instruction under general principles governing instruction of the jury on the spoliation inference. Resort to due process requirements is, therefore, unnecessary.

We briefly digress, however, to address an inconsistency in our cases that has clearly influenced the briefing submitted by the parties and is perhaps a source of the confusion in this case with respect to error preservation. In a few cases, the distinction between the law governing due process violations for the bad faith destruction of potentially exculpatory evidence and the legal principles that should be applied to determine whether the evidence in a particular case supports an instruction on the adverse inference arising from a party's spoliation of evidence has been blurred. *Compare Arizona v. Youngblood,* 488 U.S. 51, 52, 109 S.Ct. 333, 334, 102 L.Ed.2d 281, 285 (1988) (considering "the extent to which the Due Process Clause of the Fourteenth Amendment requires the State to preserve evidentiary material that might be useful to a criminal defendant"), *and State v. Dulaney,* 493 N.W.2d 787, 790–91 (Iowa 1992) (same), *with State v. Langlet,* 283 N.W.2d 330, 333–35 (Iowa 1979) (setting forth requirements for spoliation inference and instruction on the inference).

■ In two of our decisions, this court applied due process case law in considering whether the trial court erred in refusing to give a spoliation instruction. *See State v. Atwood,* 602 N.W.2d 775, 784 (Iowa 1999); *State v. Hulbert,* 481 N.W.2d 329, 334 (Iowa 1992). Similarly, the law applicable to the appropriateness of a spoliation instruction was merged with constitutional due process considerations in *Foster v. State,* 378 N.W.2d 713, 718 (Iowa Ct.App.1985). While the concept of spoliation of evidence is integral to a constitutional due process violation based on the destruction of potentially exculpatory evidence, a defendant can be entitled to a spoliation instruction without showing that a refusal to give the instruction would be an infringement of his right to due process. Therefore, we take this opportunity to reaffirm the distinction between the proof required for a spoliation instruction and the proof necessary to establish a constitutional violation of due process rights. This case requires consideration only of the former.

## IV. Spoliation Instruction—Applicable Legal Principles.

■■■ A spoliation instruction is "a direction to the jury that it [may] infer from the State's failure to preserve [evidence] that the evidence would have been adverse to the State." *State v. Vincik*, 398 N.W.2d 788, 795 (Iowa 1987). The definitive Iowa case on a defendant's entitlement to a spoliation instruction based on the government's destruction of evidence is *State v. Langlet*, 283 N.W.2d 330 (Iowa 1979). In that case this court noted the general principle that when evidence is intentionally destroyed, "the fact finder may draw the inference that the evidence destroyed was unfavorable to the party responsible for its spoliation." 283 N.W.2d at 333. This inference is based on the rationale that a party's destruction of evidence is "an admission by conduct of the weakness of [that party's] case." *Id.* Accordingly, "the spoliation inference is not appropriate when the destruction is not intentional." *Id.*

■■■ We held in *Langlet* there must be substantial evidence to support the following facts in order to justify a spoliation inference: (1) the evidence was "in existence"; (2) the evidence was "in the possession of or under control of the party" charged with its destruction; (3) the evidence "would have been admissible at trial"; and (4) "the party responsible for its destruction did so intentionally." *Id.* at 335. Before instructing the jury on the inference, the trial court must make a threshold determination that the foundation for the inference is sufficient, in other words, that " 'a jury could appropriately deduce from the underlying circumstances the adverse fact sought to be inferred.' " *Id.* (citation omitted). Once the court gives a spoliation instruction, it is up to the jury to decide whether to draw the spoliation inference in the particular case. *Id.*

## V. Scope of Review.

We have reviewed a trial court's refusal to give a spoliation instruction for an abuse of discretion. *See Vincik*, 398 N.W.2d at 795; *Langlet*, 283 N.W.2d at 336. This standard of review is in contrast to our typical review of alleged instructional error for correction of errors at law. *See State v. Ceaser*, 585 N.W.2d 192, 193 (Iowa 1998) ("We review a challenge to the district court's refusal to submit a jury instruction for correction of errors of law."). *But see State v. Piper*, 663 N.W.2d 894, 915 (Iowa 2003) (stating "the particular *form* of an instruction is left to the discretion of the trial court" (emphasis added)). Even with respect to other inference instructions, we have utilized the correction-of-errors-of-law standard of review. *See State v. Bone*, 429 N.W.2d 123, 126 (Iowa 1988) (reviewing court's decision to instruct on inference arising from defendant's flight for correction of errors of law); *State v. Mayberry*, 411 N.W.2d 677, 684 (Iowa 1987) (reviewing court's refusal to instruct on inference for correction of errors of law).

■ Upon considering this question, we think the proper standard of review is for correction of errors of law. As discussed above, the defendant need only generate a jury question on four specific factors in order to meet the requirements for a spoliation inference. If substantial evidence has been introduced on each element, then, as we said in *State v. Ueding*, 400 N.W.2d 550, 552 (Iowa 1987), a spoliation instruction "should be given." Our conclusion that spoliation instructions should be given when supported by the record is particularly appropriate given the potential for constitutional due process implications arising from the State's intentional destruction of evidence. It is this potential that distinguishes the spoliation inference from other inferences that are routinely

drawn from evidence and upon which instructions are not required. *See State v. Simpson,* 528 N.W.2d 627, 632 (Iowa 1995) (stating court need not "instruct the jury upon all inferences arising from the evidence"), *overruled on other grounds by State v. Webb,* 648 N.W.2d 72, 79 (Iowa 2002).

■ We conclude, therefore, that the trial court does not have discretion to refuse a spoliation instruction when the defendant has generated a jury question on the spoliation inference. *Cf. Ceaser,* 585 N.W.2d at 193 (stating trial court must instruct on an affirmative defense if substantial evidence exists showing that the defense applies). Therefore, the only matter to be reviewed on appeal is whether the trial court accurately determined the requested instruction did not have adequate evidentiary support. That type of trial court decision is normally reviewed for the correction of errors of law. *See State v. Walker,* 600 N.W.2d 606, 608 (Iowa 1999) (reviewing defendant's claim that instruction not supported by substantial evidence for correction of errors of law). *See generally State v. Rodriquez,* 636 N.W.2d 234, 240 (Iowa 2001) (noting abuse-of-discretion standard recognizes that the matter reviewed is a judgment call by the trial court). Therefore, we review the trial court's refusal to instruct on the spoliation inference for the correction of errors of law.

VI. *Discussion.*

■ We now consider whether the defendant generated a jury question on the spoliation inference. As noted earlier, this adverse inference is permitted when (1) evidence exists, (2) it is in the possession or under the control of the State, (3) it would have been admissible at trial, and (4) the State intentionally destroyed the evidence. The only elements genuinely disputed here are whether the evidence

ever existed and whether the State intentionally destroyed it. We focus on the evidence tending to establish these facts.

A. *Existence of evidence.* No witness testified that he or she had actually viewed a tape made of the scuffle between the defendant and officer Phillips. We think, however, there was little dispute among the State's witnesses that the booking area was videotaped on the morning of February 26. Mike Blaesi, a detective in the Scott County sheriff's office who investigated this incident, testified there is a video camera in the booking area and "jail administration would have had some type of a videotape of the booking area" from February 26. The booking officer on duty that day, Debra Harris, testified there are two video cameras in the booking area, one on each end. Based on her experience, there should have been a videotape taping at the time of the defendant's scuffle with the correctional officers. Officer Phillips also confirmed that the booking area is taped and officer Thomas Vasquez, who helped handcuff the defendant, testified the camera in the booking area is on twenty-four hours a day. Clearly, there was substantial evidence that a videotape existed.

The real dispute centered on whether the videotape from the booking area would have shown what happened at the door to holding cell 6. Officer Phillips acknowledged that "a tape [was] made of the outside of Holding Cell 6 that morning." He also testified that he remained outside the door until he was assaulted by Hartsfield and pushed Hartsfield into his cell. Harris, the booking officer, said the camera located over the desk in the booking area would show cell 6. She testified that if a person was standing in front of the door to cell 6, that person would be shown on the videotape. She asserted, however, the open door would have blocked any view of

what occurred on the other side of the door and the camera would not film anything that happened inside the cell. She gave no indication, however, that anything would have prevented the cameras from recording the verbal exchange that occurred between officer Phillips and Hartsfield.

Detective Blaesi testified he asked for the videotape during his investigation and was told the incident took place inside cell 6. He said that had he known the initial contact was in the doorway to cell 6, he would have attempted to obtain the tape. A jury could infer from this testimony that detective Blaesi, who was familiar with the camera placement in the booking area, thought the videotape would contain pertinent information that would assist his investigation. In fact, he said at trial that the video camera would have made a tape of what goes on outside of the holding cell.

We think the testimony of these witnesses is substantial evidence that a videotape existed and that it would have provided an audio and at least a partial video record of the events giving rise to the defendant's criminal prosecution. Therefore, the only remaining issue is whether there was substantial evidence that the State intentionally erased the tape.

B. *Intentional destruction of videotape.* There was uncontroverted testimony that videotapes of the booking area are routinely erased and reused thirty days after taping. The defendant does not dispute that the videotape made on February 26 was erased pursuant to this practice. Ordinarily evidence destroyed under a neutral record destruction policy is not considered intentionally destroyed so as to justify a spoliation instruction. *See State v. Bowers,* 661 N.W.2d 536, 543 (Iowa 2003). We think, however, that the circumstances of this case would support a finding that the destruction of the record-

ing was intentional so as to support an adverse inference.

The State knew the defendant wanted to obtain the videotape. Shortly after noon on February 26, Hartsfield requested the tape from an officer Tee, who had served the defendant with notice of pending disciplinary proceedings arising out of the same incident. Officer Tee documented this request in his report to his supervising officer and this report was made a part of the record in Hartsfield's criminal prosecution.

In addition, the defendant's trial counsel made a professional statement at Hartsfield's trial that on the morning of the assault, he asked the jailers for the videotape and was told that the cameras in the booking area were for monitoring purposes only, not for recording. This conversation was corroborated in part by officer Phillips. Officer Phillips admitted that he remembered defense counsel coming to the booking area on the morning of February 26 after the alleged assault. Officer Phillips also recalled that counsel asked whether a videotape was available. The officer claimed to have no recollection that defense counsel wanted the tape saved.

There was also evidence from which the jury could conclude that investigator Blaesi was misled with respect to the circumstances of the incident so as to cause him not to obtain the videotape. As noted earlier, investigator Blaesi asked for the tape, but was told the incident occurred inside cell 6 outside the view of the camera. In fact, the scuffle started at the doorway to cell 6 and had Blaesi been correctly informed of this fact, he would have acquired the videotape.

We think the foregoing testimony provides substantial evidence for a finding that the State intentionally withheld the tape from the defendant and his counsel,

as well as its own investigator, and then knowingly allowed the recording to be destroyed. Under these circumstances, a fact finder could conclude the State's actions were an admission the recording was unfavorable to its case. Therefore, we conclude there was substantial evidence to support a finding that the evidence was intentionally destroyed. Having concluded there is substantial evidence to support a spoliation inference, we think the trial court erred in failing to give the requested spoliation instruction.

## VII. *Prejudice.*

 Instructional error is not reversible error unless there is prejudice. *See Piper,* 663 N.W.2d at 914. Prejudice exists when the rights of the defendant "have been injuriously affected" or the defendant "has suffered a miscarriage of justice." *State v. Williams,* 574 N.W.2d 293, 298 (Iowa 1998); *accord State v. Hackney,* 397 N.W.2d 723, 729 (Iowa 1986). We think the error here did result in prejudice because Hartsfield's right to present his defense was injuriously affected by the trial court's refusal to give the spoliation instruction.

The adverse inference sought by the defendant went to a key piece of evidence that would have provided a reliable record of what happened on February 26. Thus, the spoliation instruction was central to Hartsfield's theory of defense. *Cf. State v. Metz,* 636 N.W.2d 94, 99 (Iowa 2001) (holding improper impeachment was not harmless error when contradicted facts went to the core of the defendant's defense); *State v. Long,* 628 N.W.2d 440, 447 (Iowa 2001) (holding erroneous admission of hearsay statements was prejudicial where statements went to the heart of the defendant's only defense).

In addition, the evidence at issue was unique and not cumulative. In *Langlet,*

this court considered the prejudice resulting from the destruction of police station tape recordings of the phone calls made by the defendant after he was arrested for drunk driving. 283 N.W.2d at 332. Even though witnesses testified at trial that the defendant's speech was normal, we rejected the State's assertion that the defendant was not prejudiced, noting "the auditory impact of the taped conversations is qualitatively different from the testimony of the other witnesses." *Id.* Here, where the defendant asserts the videotape would contradict the testimony of the State's witnesses, the prejudice is even more apparent.

## VIII. *Summary and Disposition.*

We conclude the defendant introduced substantial evidence of the factual prerequisites for a spoliation inference. Therefore, the district court erred in refusing to give a spoliation instruction as requested by the defendant's counsel. Because this error prejudiced the defendant, we must reverse Hartsfield's judgment of conviction and sentence and remand for retrial.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**