# IN THE COURT OF APPEALS OF IOWA

No. 4-004 / 12-0955
Filed February 19, 2014

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**ANDREA KANDACE DONNAN,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Joseph Moothart (suppression) and Jeffrey L. Harris (trial and sentencing), District Associate Judges.

A defendant appeals her convictions for operating while intoxicated and drug possession. **AFFIRMED**.

Thomas Frerichs, Frerichs Law Office, P.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, Sharon Hall, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Sue Swan and Jeremy Westendorf, Assistant County Attorneys, for appellee.

Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**TABOR, J.**

We are asked to decide if a LaPorte City peace officer violated the Fourth Amendment by stopping a Jeep Cherokee registered in Dubuque County to Andrea Donnan. Donnan claims the officer lacked reasonable suspicion to investigate whether her driving violated the terms of her temporary restricted license. She also maintains the district court erred in refusing to draw an adverse inference from the officer's act of turning off his body microphone for twenty seconds to talk with another officer during the investigatory stop.

Because Donnan was driving outside of normal business hours in a city located ninety minutes from her residence and engaged in conduct indicating she was reluctant to have police see her driving, the officer had reasonable cause to stop the Jeep to confirm or dispel his suspicion Donnan was violating her license restrictions. The district court did not err in denying her motion to suppress evidence of operating while intoxicated (OWI) and drug possession found after the stop. Moreover, we find no legal basis for the suppression court to draw a negative inference from the officer's action. Accordingly, we affirm.

## I.      Background Facts and Proceedings

Around 10:30 p.m., on May 20, 2011, La Porte City Police Officer Andrew Nissen drove into the parking lot of the local Casey's convenience store. Casey's closes at 11:00 p.m., and the patrol officer made it a practice to swing by the store around closing time. Officer Nissen saw a black Jeep Cherokee parked at a gas pump close to the store. The apparent occupants of the Jeep started

walking out of the store toward the vehicle. When they saw the officer, they stopped and retreated into the store.

Officer Nissen ran the Jeep's license plates through the Department of Transportation (DOT) database and determined Donnan was the registered owner, her operating privileges were revoked, she had a temporary restricted license, and she had a Dubuque address. Nissen learned from the driver's license information that Donnan was a twenty-two-year-old white female, who was five feet two inches tall and weighed 130 pounds. The woman he saw approaching the Jeep matched that general description.

Officer Nissen talked to another customer in the parking lot and then left. He returned to the lot and saw the Jeep still parked at the pumps. The occupants were in the vehicle watching the officer for about ten minutes. The young woman matching Donnan's description was in the driver's seat. Officer Nissen then left the area and drove approximately seventy yards down the highway, parked, and turned his vehicle's lights off. Nissen testified he used binoculars to watch and determine the young woman was still in the driver's seat. The Jeep left Casey's parking lot and proceeded down the highway away from the officer's location. The officer followed the Jeep to a nearby motel and made a traffic stop.

Officer Nissen found Donnan in the driver's seat and told her the reason he pulled her over was because she didn't have a license to be driving around in

LaPorte City when she was from Dubuque.[1]  Nissen asked Donnan if that "made sense" and she agreed it did.  Later during the stop, Donnan complained the stop was "unjust," and the officer had "no reason to pull [her] over."  The officer told her because she had only a "temporary work license" and was from Dubuque she had "no business" driving in LaPorte City.

The officer's investigation revealed Donnan had been operating a vehicle while under the influence of alcohol, drugs or a combination of those and possessed marijuana.  On June 22, 2011, the State filed a trial information charging Donnan with possession of a controlled substance in violation of Iowa Code section 124.401(5) (2011), and operating while intoxicated, third offense, in violation of section 321J.2.

On August 10, 2011, Donnan filed a motion to suppress, arguing police lacked probable cause to stop her vehicle.  The State presented the testimony of Officer Nissen at the August 22, 2011 suppression hearing.  On September 7, 2011, the Court denied the motion to suppress, concluding the officer had reasonable suspicion to believe "she was operating beyond the terms of her temporary restricted license" in violation of Iowa Code section 321.193.[2]

On September 9, 2011, Donnan filed a motion for expanded findings of fact and conclusions of law, arguing—among other things—that Officer Nissen's

---

[1]  The defense offered the recording of the traffic stop as an exhibit at the suppression hearing.  The audio of the officer's encounter with Donnan was recorded by his body microphone and the video was recorded by the officer's dash camera.

[2]  The department may set forth restrictions upon the driver's license . . . .  It is a simple misdemeanor punishable as a scheduled violation under section 805.8A, subsection 4, for a person to operate a motor vehicle in any manner in violation of the restrictions imposed on a restricted license issued to that person under this section.

act of turning off his microphone when speaking to another officer should be considered "spoliation of potentially exculpatory evidence" and a due process violation. On September 25, 2011, the district court denied Donnan's request for an adverse inference from the officer's conduct and reaffirmed its original ruling denying the motion to suppress.

The district court found Donnan guilty of both charges based upon stipulated evidence. She now appeals, challenging the suppression rulings.

## II. Standard of Review

We review Donnan's constitutional challenge de novo. *See State v. Vance*, 790 N.W.2d 775, 780 (Iowa 2010). We owe deference to the district court's findings of fact because it had the chance to assess witness credibility, but we are not bound by those findings. *See id.*

To the extent we are reviewing the district court's ruling on Donnan's spoliation claim; our standard is for correction of legal error. *See State v. Hartsfield*, 681 N.W.2d 626, 630–31 (Iowa 2004).

## III. Analysis

### A. Did the peace officer have reasonable suspicion to stop the vehicle based on his belief the owner was operating outside the restrictions on her temporary restricted license?

A search or seizure is not reasonable under the Fourth Amendment unless the peace officer has a warrant or a recognized exception applies. *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002). A well-established exception allows an officer to briefly stop an individual or vehicle for investigatory purposes when the officer has a reasonable, articulable suspicion that a criminal act has

occurred, is occurring, or is about to occur. *State v. Kinkead*, 570 N.W.2d 97, 100 (Iowa 1997) (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)). Although an officer must rely on more than a hunch, the likelihood of criminal activity does not need to rise to the level required for probable cause, and "it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

"The principal function of an investigatory stop is to resolve the ambiguity as to whether criminal activity is afoot." *State v. Richardson*, 501 N.W.2d 495, 497 (Iowa 1993). Reasonable cause for a stop may exist even if the conduct being investigated is "subject to a legitimate explanation and turns out to be wholly lawful." *Id.*

Our supreme court summarized the test as follows:

> Whether reasonable suspicion exists for an investigatory stop must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time the decision to stop is made. The circumstances under which the officer acted must be viewed "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training."

*Vance*, 790 N.W.2d at 781 (internal citations omitted).

After Officer Nissen noticed the reluctance of the Jeep Cherokee's occupants to return to their vehicle in his presence, he ran the license plate[3] and discovered the registered owner, Donnan, had a temporary restricted license.[4]

---

[3] A driver has no reasonable expectation of privacy in her license plate. *United States v. Ellison*, 462 F.3d 557, 561 (6th Cir. 2006).

[4] It was reasonable for Officer Nissen to infer the driver of the vehicle was its owner given the absence of evidence to the contrary. *See State v. Mills*, 458 N.W.2d 395, 397 (Iowa Ct. App. 1990); *see also Vance*, 790 N.W.2d at 781 (finding it "reasonable for an officer to infer the registered owner of the vehicle will do the vast amount of driving").

Her license listed a Dubuque address. The officer was aware that Dubuque was about a ninety-minute drive from LaPorte City. Nissen testified: "Through my training and experience, the only people that have temporary restricted licenses, they're issued for work-related causes, not for stopping at a gas station at 10:30 p.m. on a weekend night a hundred miles from your residence."

Donnan contends Officer Nissen "did not have specific facts to reasonably believe criminal activity was afoot." She discounts the potency of the officer's observation of her "leaving and going back into the convenience store," the time of night, and her distance from home as forming nothing more than "a hunch" on the officer's part that she was breaking the law. We would agree with Donnan that those circumstances alone do not give rise to a reasonable suspicion of criminal activity. But when we factor in the officer's knowledge that Donnan had a temporary restricted license and his experience that such licenses are "issued for work-related causes" we agree with the district court's conclusion the officer had reasonable cause to stop her Jeep Cherokee to investigate whether she was violating Iowa Code section 321.193.

Donnan points out the DOT may issue temporary restricted licenses for purposes other than transportation to a place of employment, including child care, health care, education, substance abuse treatment or community service. *See* Iowa Admin. Code 761–630.3 (321J). She also argues it is possible for someone to travel distances for their job and to work during night-time hours.

Moreover, the officer confirmed the description on Donnan's license generally matched the physical features of the young woman in the driver's seat of the Jeep.

She asserts denying her motion to suppress is "an invitation for police officers to stop every person with a temporary restricted license." We disagree.

It is the combination of circumstances in this case that allowed the officer to make the investigatory stop. *See Arvizu*, 534 U.S. at 273 (reiterating "totality-of-the-circumstances" test and rejecting "divide-and-conquer" analysis that ignores factors susceptible to an innocent explanation). It was reasonable for Officer Nissen to believe, based on his training and experience, that the DOT would likely issue a temporary restricted license for a driver to commute to and from work, or to perform other permitted activities, only in the community in which she lived. Because Donnan's license listed her residence as Dubuque, ninety miles away LaPorte City, the officer could stop her car to confirm or dispel his reasonable suspicion she was violating her restrictions. *See Richardson*, 501 N.W.2d at 497 (explaining "principal function" of stop was "to resolve ambiguity as whether criminal activity was afoot"). In addition, a reasonable officer could suspect Donnan's restrictions would preclude her from transporting other passengers. The officer also was entitled to supplement the restricted license information with his initial assessment of Donnan's reaction upon seeing him. *See Arvizu*, 534 U.S. at 277 (including in totality of circumstances officer's common sense inference that motorists are behaving oddly).

Donnan advances a persuasive argument that a peace officer may not stop every driver with a temporary restricted license simply to verify she is not violating the restrictions. *But see People v. Close*, 939 N.E.2d 463, 471 (Ill. 2010) (rejecting defendant's argument officer must have a reasonable, articulable

suspicion that driver is operating outside terms of his restricted driving permit to effect a lawful *Terry* stop for driving while revoked). But on the flipside, an officer should not be barred from considering the fact a driver is operating with a temporary restricted license a significant distance from her home at a somewhat unlikely hour for business activities when assessing whether there is reasonable cause for an investigatory stop for a violation of Iowa Code section 321.193. Given the totality of circumstances, we conclude the district court properly overruled the motion to suppress.

**B.      Did the district court err in declining to draw an adverse inference from the officer turning off his body microphone during the traffic stop?**

About twenty-three minutes into the traffic stop, Officer Nissen switched off his body microphone, which had been recording the audio portion of his encounter with Donnan. The sound remained off for about twenty seconds. At that point, Nissen had already placed Donnan under arrest and in the back of his squad car. Another officer could be heard asking Nissen if he conducted a traffic stop. Nissen responded, "[N]o, here's what I did," and then cut the sound. Defense counsel asked Officer Nissen why he turned off the audio recording and he responded: "I don't know." During redirect examination, the officer testified he had turned off the sound in "countless" similar situations believing it was "common courtesy" when talking to another officer. Nissen also said he had been trained to do so.

When asked by the prosecutor, Nissen explained that while the microphone was off, he told a fellow officer that he had turned his lights on when

he was leaving Casey's parking lot—"like [he] was going on a call"—and then "blacked out" his vehicle about seventy yards down the road to see if Donnan would start driving in a belief the coast was clear.

Donnan's counsel argued at the close of the suppression hearing that the court should "take a negative inference" from the officer's decision to turn off his microphone. The district court mentioned the microphone incident in its September 7, 2011 order denying the motion to suppress, but did not indicate what weight, if any, it gave the officer's action in reaching its ruling.

Donnan raised the issue again in her motion for an expanded ruling, equating the officer's intentional conduct to spoliation of potentially exculpatory evidence. The district court denied the defense request for an adverse inference in its September 26, 2011 ruling. The court found the officer's testimony regarding what he said when his body microphone was turned off to be credible and consistent with his other testimony at the hearing and his explanations to Donnan regarding his reasons for the stop, which were captured on the recording.

On appeal, Donnan claims the officer's "intentional interference" with the audio recording of the stop constituted a due process violation and under the doctrine of spoliation the district court should have drawn an adverse inference from his decision to turn off his microphone.

"Spoliation" is the common term for nonproduction, alteration, or destruction of evidence. *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001) (citing *State v. Langlet*, 283 N.W.2d 330, 333 (Iowa 1979)). "When

established, the inference is regarded as an admission by conduct of the weakness of the party's case." *Id.* Iowa courts have recognized several remedies where spoliation of evidence has occurred, including "discovery sanctions, barring duplicate evidence where fraud or intentional destruction is indicated and instructing on an unfavorable inference to be drawn from the fact that evidence was destroyed." *Meyn v. State*, 594 N.W.2d 31, 34 (Iowa 1999).

Donnan does not cite any Iowa case addressing a spoliation claim in the context of a suppression motion. Nevertheless, we will reach the merits of Donnan's claim, assuming without deciding the doctrine may require a suppression court to entertain an adverse inference toward the State's case from a peace officer's intentional destruction of potentially exculpatory evidence.

Donnan's first hurdle is to show Officer Nissen destroyed evidence by turning off his body microphone. Our supreme court addressed a similar claim in *State v. Bowers*, 661 N.W.2d 536 (Iowa 2003), where the defendant "requested a spoliation instruction based on the failure to tape-record his interrogation." The *Bowers* court stated: "We have not been made aware of any requirement that law enforcement officers tape-record their interviews, and a failure to do so may in no way be equated with the destruction of evidence." 661 N.W.2d at 543. The *Bowers* language recognizes spoliation only occurs when a State actor destroys *existing* evidence. *See State v. Hartsfield*, 681 N.W.2d 626, 630 (Iowa 2004) (stating party seeking adverse inference must prove "evidence was in existence"); *see also Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 399 (1st Cir. 2012) (holding "claim of spoliation will not lie" when "there is no

evidence to begin with"). Donnan is essentially arguing the officer had a duty to collect all evidence. *See Gomez*, 670 F.3d at 399. *Bowers* declined to create such a duty.

Since *Bowers*, our supreme court has "encouraged" the video and audio taping of custodial, as well as noncustodial interviews, when it is practical to do so. *State v. Madsen*, 813 N.W.2d 714, 722 (Iowa 2012); *State v. Hajtic*, 724 N.W.2d 449, 456 (Iowa 2006). But neither *Madsen* nor *Hajtic* speaks to the necessity or propriety of recording the entirety of traffic stops, even the portion of the stops where officers are speaking among themselves rather than with a suspect. Following the logic of the *Bowers* decision, because we are not aware of any requirement that peace officers tape-record all of their conversations that occur during a traffic stop, we do not equate Officer Nissen's failure to do so here with the destruction of evidence.

Moreover, even if Officer Nissen's action could be viewed as the destruction of evidence, the record does not support an inference the evidence was potentially exculpatory to Donnan. The district court found the officer to be credible in his suppression testimony explaining what he said to the other officer while the microphone was turned off. We defer to that credibility finding. What Officer Nissen told his colleague did not contradict the reason Nissen gave Donnan for pulling her over.[5] Accordingly, we find no error in the district court's denial of Donnan's request for an adverse inference from the officer's action.

---

[5] Even if the officer had revealed ulterior motives for the stop during the unrecorded conversation, "the constitutional reasonableness of traffic stops does *not* depend on the actual motivation of the individual officers involved." *State v. Predka*, 555 N.W.2d 202, 205 (Iowa 1996).

*See generally United States v. Jimenez*, 446 F. App'x 771, 774 (6th Cir. 2011) (upholding traffic stop and emphasizing "the Defendants offer no reason why turning off his microphone while discussing the situation with his fellow officers, standing alone, is enough to displace the district court's credibility determination").

We conclude the instant facts did not require the suppression court to draw a negative inference against the prosecution. That being said, we could foresee a future case where selective recording would significantly weaken the officer's credibility and, in turn, threaten the admissibility of the evidence collected during the investigatory stop. But because that is not the situation here, we affirm.

**AFFIRMED.**