# IN THE COURT OF APPEALS OF IOWA

No. 3-1233 / 12-1423
Filed March 12, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DONTRAYIUS EUGENE CAREY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Andrea J.

Dryer, Judge.


        The defendant appeals his conviction of assault causing serious injury.

**AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Tyler Buller, Assistant Attorney

General, Anthony Garcia, Student Legal Intern, Thomas J. Ferguson, County

Attorney, and Brook Jacobsen, Assistant County Attorney, for appellee.


        Considered by Danilson, C.J., Mullins, J., and Miller, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**MILLER, S.J.**

Dontrayius Carey appeals his conviction of assault causing serious injury, in violation of Iowa Code sections 708.1 and 708.2(4) (2011). He contends the district court erred in two respects: (1) in failing to instruct the jury on spoliation and (2) in denying his motion for new trial based upon prosecutorial misconduct. After concluding both claims are without merit, we affirm.

**I. Background Facts and Proceedings.**

In the early morning hours of April 7, 2011, Shane Mehmen was punched in the face at a Waterloo sports bar and suffered serious injuries. Because the incident was captured on surveillance video, there is no dispute that Carey delivered the blow to Mehmen. On this basis, the State charged Carey with assault causing serious injury, a class "D" felony.[1]

A jury trial was held in May 2012. Officer Kyle Law testified that he obtained the surveillance equipment from the sports bar and had approximately ten minutes of the video footage of the incident copied before returning the equipment to the sports bar's owner on April 17, 2011. This video, depicting what occurred for approximately three minutes before the assault and approximately seven minutes after, was played for the jury.

Mehmen testified that he was intoxicated on the night in question and had a confrontation with someone when he arrived at the bar around midnight. Mehmen recalled that he bumped into another person and said something that

---

[1] Carey was originally charged on May 16, 2011, with willful injury, in violation of Iowa Code section 708.4(1), a class "C" felony. The charge was amended to assault causing serious injury on May 3, 2012.

"probably wasn't nice." At that point, a bouncer asked Mehmen to leave the bar. Mehmen was allowed to re-enter the bar minutes later in order to apologize to the other patron. Mehmen recalled delivering the apology, socializing with friends on the dance floor, and then waking up in the hospital. Other witnesses testified similarly.

Carey testified in his own defense. He stated that he was repeatedly confronted by Mehmen and his companions that night, and that Mehmen was challenging him. Carey testified that during their last encounter, Mehmen pushed on his left shoulder. When Carey turned around, he saw a hand and reacted by punching Mehmen to defend himself.

During closing arguments, Carey's trial counsel discussed the lack of context for the assault, arguing Carey acted in self-defense. His counsel stated:

> The State had the opportunity—because they have the burden of proof—they had the opportunity to bring in the bar owner, the bouncers, anybody else who might have seen that they were outside. I don't have to do that. I don't have to prove anything. It's the State's job. Why didn't they bring those people in? I guess they thought three minutes and a punch would do it.

During the State's reply in rebuttal, the prosecutor responded:

> Could the State have subpoenaed bouncers and Edwin/Edo? Sure. So can the defense. You know that, because they already forced witnesses to come in under subpoena. If they're so convinced that Edo's going to say, "This guy was a danger but we let him back in anyway," why didn't they subpoena? It cuts both ways.

The court overruled Carey's objection to these statements.

The jury found Carey guilty as charged. Carey filed a motion for new trial, arguing the district court erred in failing to give the jury a requested spoliation

instruction and in overruling his objection to the prosecutor's statement regarding his failure to subpoena witnesses, which he characterized as prosecutorial misconduct. The district court overruled the motion. The court then sentenced Carey to a term of imprisonment, not to exceed five years, and assessed him various fines and fees. His sentence was ordered to run consecutively with a sentence in a separate, unrelated case.

## II. Spoliation.

Carey first contends the court erred in failing to instruct the jury on spoliation of evidence. When spoliation—the intentional destruction of evidence—occurs, the fact finder is permitted to draw the inference that the evidence destroyed was unfavorable to the party responsible for its spoliation. *State v. Langlet*, 283 N.W.2d 330, 333 (Iowa 1979).

Because spoliation instructions should be given when supported by the record, the trial court does not have discretion to refuse a spoliation instruction when the defendant has generated a jury question on the spoliation inference. *State v. Hartsfield*, 681 N.W.2d 626, 630-31 (Iowa 2004). The only question to be considered on appeal is whether the trial court accurately determined the requested spoliation instruction did not have adequate evidentiary support. *Id.* at 631. We review such decisions for the correction of errors at law. *Id.*

In order to warrant a spoliation instruction, there must be substantial evidence of the following: "(1) the evidence was 'in existence'; (2) the evidence was 'in the possession of or under control of the party' charged with its destruction; (3) the evidence 'would have been admissible at trial'; and (4) 'the

party responsible for its destruction did so intentionally.'" *Id.* at 630 (quoting *Langlet*, 283 N.W.2d at 335). Carey argues the State only copied a ten-minute segment of the surveillance video rather than the entire video, and that the original video has since been destroyed. He argues the State's failure to preserve the video in its entirety prejudiced his ability to present a defense because a complete recording "would help to explain why defendant may have perceived Mehmen's alleged gesture of goodwill as a threat instead."

The State argues that the record does not adequately disclose that the video was destroyed. In the alternative, it argues that the party charged with the destruction—the State—was not in possession of the video, since the surveillance equipment that contained the original video had been returned to the bar owner. We need not address these arguments to resolve the claim because Carey did not present substantial evidence that the video's destruction was "intentional."

In order to show spoliation, it is not enough that evidence is destroyed; only the intentional destruction of evidence can support the rationale of the rule that the destruction amounts to an admission by conduct of the weaknesses of one's case. *Langlet*, 283 N.W.2d at 333. Here, the State obtained the surveillance equipment with the video recording following the assault and returned the equipment on April 17, 2011. The video of the night of April 7, 2011, was presumably recorded over as part of the bar's neutral record destruction policy. *See Hartsfield*, 681 N.W.2d at 632 ("Ordinarily evidence destroyed under a neutral record destruction policy is not considered intentionally destroyed so as

to justify a spoliation instruction."). There is no evidence the State had knowledge that Carey wanted the whole video or that any portion of the video would have assisted in his defense prior to the filing of Carey's notice of self-defense on August 24, 2011—some four months after the surveillance equipment had been returned. *Cf. id.* at 632-33 (concluding the trial court erred in failing to instruct on spoliation where substantial evidence supported a finding the State intentionally destroyed evidence by withholding it from the defendant and knowingly allowing it to be destroyed under a neutral record destruction policy). Because there is insufficient evidence to support a finding the destruction of the video was intentional, we affirm on this issue.

**III. Prosecutorial Misconduct.**

Carey also contends the court erred in denying his motion for new trial because the prosecutor engaged in misconduct. Given the trial court's broad discretion on ruling on such claims, we review this ruling for an abuse of discretion. *See State v. Jacobs*, 607 N.W.2d 679, 689 (Iowa 2000). We will only find an abuse of discretion if (1) the prosecutor engaged in misconduct and (2) that misconduct prejudiced Carey such that he was deprived of a fair trial. *See id.*

In closing argument, the assistant county attorney stated that Carey had the ability to subpoena the bar owner or any of the bouncers to testify in his defense. The prosecutor then asked why, if Carey was so sure those witnesses would have testified favorably, he failed to call them. Carey alleges the statement impermissibly shifted the burden of proof to him.

A prosecutor's argument that focuses on the lack of evidence or failure to produce witnesses may amount to misconduct if it shifts the burden of proof to the defendant. *State v. Bishop*, 387 N.W.2d 554, 563 (Iowa 1986). However, not all remarks relating to the evidence are forbidden. *Id.* We view the prosecutor's statements in closing argument in the context in which they were made, rather than in isolation. *Id.* Here, the comments were made in rebuttal to Carey's closing argument, which referred to the State's failure to call the same witnesses, implying those witnesses would contradict the State's theory of the case. "We allow a prosecutor some leeway when his remarks 'are provoked and are offered in retaliation to arguments for the accused.'" *Wycoff v. State*, 382 N.W.2d 462, 468 (Iowa 1986) (quoting *State v. Wright*, 309 N.W.2d 891, 893 (Iowa 1981)). Furthermore, our supreme court has held that a prosecutor's act of asking the jury in closing argument why the defendant did not call certain witnesses to testify "amounted to fair comment," not misconduct. *See State v. Craig*, 490 N.W.2d 795, 797 (Iowa 1992).

The prosecutor's statement, made in response to Carey's argument, did not impermissibly shift the burden of proof to Carey. Accordingly, there was no misconduct. The district court properly denied Carey's motion for new trial on this basis, and we affirm on this issue.

**AFFIRMED.**